In the Matter of RICHARD BLACKBURN, Petitioner, against JAMES R. MACDUFF, as Commissioner of Motor Vehicles of the State of New York, Respondent.

Supreme Court, Special Term, Onondaga County, July 27, 1954.

*Raymond M. Bush* for petitioner.

*Nathaniel L. Goldstein, Attorney-General* (*Herman H. Arkin* of counsel), for respondent.

HUDSON, J. The petitioner seeks a review of the determination of the Commissioner of Motor Vehicles in revoking his operator's license and seeks a reinstatement thereof. The first ground of the application is that he was not advised of his rights upon arraignment and conviction of the third charge of speeding. The second ground is of the refusal of the Commissioner of Motor Vehicles to grant an operator's license after the expiration of six months from the date of the revocation of said license upon the petitioner's new application therefor, such second ground being based upon the claim that the commissioner acted arbitrarily and capriciously.

As to the first ground, the commissioner in his answer sets forth that by reason of section 1286 of the Civil Practice Act a proceeding under article 78 must be instituted by the service of the petition and accompanying papers within four months after the determination to be reviewed becomes final and binding. The petitioner was arrested on June 16, 1953, was arraigned on that day and upon a plea of guilty, was sentenced. The suspension order was issued on September 22, 1953, and the petition was not served until May 6, 1954, clearly more than four months after the issuance of the revocation order. I am of the opinion that section 1286 prohibits the institution of the proceedings by petitioner upon the ground he was not advised of his rights. Although the question was not raised by the petitioner, his conviction occurred fifteen days before the effective date of the 1953 amendment to section 335-a of the Code of Criminal Procedure. The petitioner sets forth that at the time of entering a plea of guilty he thought that a fine would be the only penalty arising out of the offense and that he was not informed that his driver's license must be revoked and that he was not properly advised of his rights. Nothing contradictory of this statement was submitted on behalf of the respondent. The law as it existed at the time of the conviction of the petitioner was well settled that unless one charged with a violation was advised

prior to his arraignment that his license would be mandatorily revoked upon his conviction, if such was the case, that he was not properly advised of his rights as required by section 335-a of the Code of Criminal Procedure and that the mere reading of that section alone was not sufficient to properly notify the petitioner. (*Matter of Lauback* v. *Fletcher,* 201 Misc. 602; *People* v. *Sutcliffe,* 255 App. Div. 299; *People* v. *Spence,* 176 Misc. 676.)

The fact that the law had been so established was well known to the Commissioner of Motor Vehicles as it was given by him in supporting passage of the 1953 amendment to section 335-a, which became effective July 1, 1953. (New York State Legislative Annual — 1953, p. 266.)

If the petitioner was not properly advised of his rights, while he is barred from raising the question by reason of the provisions of section 1286 in this proceeding, his rights are amply protected by the requirement of subdivision 6 of section 71 of the Vehicle and Traffic Law which provides as follows: " No suspension or revocation of a license or certificate of registration shall be made because of a judgment of conviction if the suspending or revoking officer is satisfied that the magistrate who pronounced the judgment failed to comply with section three hundred and thirty-five-a of the code of criminal procedure. In case a suspension or revocation has been made and the commissioner is satisfied that there was such failure, he shall restore the license or certificate of registration or both as the case may be."

As far as the record before me is concerned it would seem clear that the petitioner had not been properly advised of his rights under the law as it existed at that time and is entitled to relief under the provisions of subdivision 6 of section 71. The petitioner relied upon other grounds and cannot be given relief in this proceeding.

As to the second ground set forth in the petition, the petitioner alleges that he surrendered his operator's license in accordance with the revocation order of the Commissioner of Motor Vehicles on September 22, 1953, and after the expiration of six months from the date of such surrender he made a new application for an operator's license and paid the required fee therefor. That on April 14, 1954, he received a letter from the Bureau of Motor Vehicles denying his application, such letter reading as follows:

" With reference to your application for a driver's license, we wish to advise that your case has been reviewed and your record carefully examined.

"Because of your record of traffic law violations, it is deemed inadvisable to grant you the privilege of operating motor vehicles at this time.

"You may again apply for a license on or after Sept. 21, 1954 and submit an original application, at which time your request will be given consideration.

"The appalling number of disastrous motor vehicle accidents on the highways of our State forces us to use every means within our power to insure that operators recognize their responsibility.

"A record involving several violations of the traffic laws must be carefully considered, and we must be certain that the offender is made to realize the seriousness of his improper driving so that there will be no further violations by him.

"We wish to stress that until your license is restored you cannot legally operate a motor vehicle. Any such violation will affect the approval of an application submitted on or after the above date."

The petitioner further sets forth that his operator's license was revoked because of a conviction of three charges of speeding within a period of eighteen months. That for each conviction he paid the fine which was imposed upon him by the magistrate and upon the revocation of his license he surrendered it to the commissioner as required. That he has been guilty of no other traffic law violation other than the three speeding charges referred to and has not been involved in any accidents. That he is insured and otherwise has a good driving record and he charges that the act of the commissioner in refusing to grant him an operator's license is without reason and is arbitrary and capricious.

The Commissioner of Motor Vehicles in his answer sets forth no reason for his refusal to issue an operator's license to the petitioner except to state the mandatory revocation as required by statute and to quote the contents of subdivision 5 of section 71 of the Vehicle and Traffic Law: "Where revocation is mandatory hereunder, no new license shall be issued for at least six months after such revocation, nor thereafter, except in the discretion of the commissioner of motor vehicles". There is attached to the answer as Exhibits A, B, and C the order of revocation, the application of the petitioner for the issuance of a new license and the letter of the commissioner refusing the application. The application, which is upon the form provided by the commissioner sets forth the three convictions for speeding for which the petitioner's license was originally

revoked. It states that they are the only convictions of traffic violations of which the petitioner has been guilty. There is nothing else in the application from which any determination could be made of any other traffic infractions or violations or in fact of anything which could be construed to be against the applicant's record. The form letter, Exhibit C, attached to the answer states: '' Your case has been reviewed and your record carefully examined.'' Nothing was submitted with the answer or upon the argument of the motion either documentary or in the form of testimony to support such statement. As far as this court can tell there was nothing to be reviewed except the application itself. The statement in the letter, that petitioner's case had been reviewed and his record carefully examined, if in fact nothing was reviewed or examined other than the application itself, is a mere conclusion and of no evidentiary value. The only reason given in the letter for the refusal to issue a new license is '' because of your record of traffic violations, it is deemed inadvisable to grant you the privilege of operating motor vehicles at this time. You may again apply for a license on or after September 21, 1954 ''. Nothing has been presented by the commissioner in his answer to indicate any traffic law violations other than the three for which the petitioner's license was revoked and consequently the above reference to '' your record of traffic law violations '' must be assumed to be the three in question. The effect of the action taken by the commissioner as expressed in the letter of April 14, 1954, above referred to is to extend the statutory period of six months as fixed by subdivision 5 of section 71 to one year and if such action is based on no other facts or grounds than those which caused the mandatory revocation in the first place, there could certainly be no exercise of discretion but rather the action would constitute an arbitrary fixing of an additional period of time that the revocation should be enforced. I do not believe that the wording of the statute, '' except in the discretion of the commissioner of motor vehicles '' can mean '' at the will or pleasure of the Commissioner of Motor Vehicles '' but rather requires that there must be some grounds or reason existing because of which the commissioner in the exercise of his discretion deems it advisable at the end of six months not to issue a license if application therefor is made. I believe that the statute implies that any applicant has the right to have his case considered upon the merits and upon the facts which are applicable to his individual case and that the responsibility

of the Commissioner of Motor Vehicles in determining, as a matter of discretion, to refuse to issue a new license at the end of six months is the same as that ascribed to the Commissioner of Agriculture in *Matter of Elite Dairy Products* v. *Ten Eyck* (271 N. Y. 488), where the court stated, at page 497: " There it requires as a condition for the grant of a license that the *Commissioner* be satisfied that the applicant is properly qualified * * * The hearing is merely a method for obtaining knowledge of the facts upon which the determination must be based. That function is quasi-judicial." And at page 498: " The situation is different where the application for a license is denied. The applicant is entitled to opportunity to challenge a determination against him. * * * That determination must be made by the Commissioner ".

In considering the charge made by the petitioner that the action of the commissioner was arbitrary and capricious, it is interesting to note that in the blank space provided therefor in the application, there is written the following: " denied 4/6/54 75B ". The reference to " 75B " apparently is to the letter which the commissioner sent to the petitioner, which has hereinbefore been set forth in its entirety, as that letter bears the reference " 75B " at the foot thereof indicating it to be a form letter. The two following paragraphs in the letter are it seems to me significant:

" The appalling number of disastrous motor vehicle accidents on the highways of our State forces us to use every means within our power to insure that operators recognize their responsibility.

" A record involving several violations of the traffic laws must be carefully considered and we must be certain that the offender is made to realize the seriousness of his improper driving so that there will be no further violations by him."

These statements would seem to clearly indicate, particularly in view of the fact that it is contained in a form letter, that the Commissioner of Motor Vehicles had adopted a policy, in many instances at least, of refusing to issue a new license to one whose license had been mandatorily revoked for a period of one year instead of six months as permitted by statute. Possibly this is done under the belief that the statutory expression " nor thereafter, except in the discretion of the commissioner of motor vehicles " means a discretion to adopt a policy of punishment greater than that fixed by the statute. I cannot subscribe to the placing of any such interpretation upon the word " discretion ". An excellent statement of the meaning

of "discretion" is contained in *Calzaretta* v. *Mulrain* (131 N. Y. S. 2d 76), where the court stated, at page 79: "No facts are set forth by the respondent to warrant or justify his refusal and unless he can do so, in the face of her eligibility for a widow's pension, his denial thereof was not a 'lawful' exercise of discretion, but an arbitrary, capricious, unreasonable and illegal exercise thereof, viz., an abuse of discretion. There is an abuse of discretion by public officials where the power or right to act in an official capacity is unreasonably exercised. * * * *Discretion as applied to public officers means power or right to act in an official capacity in a manner which appears to be just and proper under the circumstances*". (Emphasis supplied.)

The petitioner has set forth that he is an electrician by trade; that he works on construction projects and that by reason of the fact that he is not licensed to operate an automobile he is unable to go to a place of employment and as a result is unemployed. The privilege of operating an automobile is a substantial one and in the present state of our economy is a real necessity for those who are obliged to earn a livelihood, particularly if they are required in doing so to travel from place to place.

The courts have recently recognized the importance of the right to drive an automobile. Excellent discussions of this subject are contained in the following cases: (*City of Rochester* v. *Falk*, 170 Misc. 238, 241; *Matter of Schutt* v. *Macduff*, 205 Misc. 43, 53; *Matter of McCord* v. *Fletcher*, 182 Misc. 447, 450) and in *Matter of Wignall* v. *Fletcher* (303 N. Y. 435), a very late decision of the Court of Appeals, Judge FROESSEL, writing for the court, stated at page 441: "We are here dealing with the exercise of power by the commissioner in the revocation of a driver's license, and our decision will apply not only to this petitioner, but may affect any other holder of a driver's license in the State of New York. A license to operate an automobile is of tremendous value to the individual and may not be taken away except by due process. If in the instant case it may be done loosely and informally and without regard to the statutes in such case made and provided, then it may be done in any case, and every automobile driver in the State will be at the mercy of the commissioner and his assistants. However much we may recognize the need for the rightful exercise by the commissioner of his duties in his laudable effort to prevent unsafe driving on the highways, it would be a dangerous step indeed if we

permitted him to follow any loose practice formulated by him, regardless of the law."

In the present case the petitioner, after being convicted three times within a period of eighteen months in violation of subdivision 3 of section 56 of the Vehicle and Traffic Law, paid the penalty imposed upon him in each instance by the magistrate and upon his license being mandatorily revoked by reason of the statutory provision therefor, surrendered his license and was without the same for a period of six months.

The mandatory revocation required by paragraph (c) of subdivision 2 of section 71 of the Vehicle and Traffic Law is the only instance which has come to my attention where a mandatory revocation is provided for in the case of an offense which is not classified at least a misdemeanor.

Speeding is a traffic infraction only. (Vehicle and Traffic Law, § 70; *Matter of Lea* v. *Macduff*, 205 Misc. 24.) Violations of section 56 result on the open road by a speed in excess of fifty miles per hour and in more restricted areas by speeds in excess of from ten to thirty-five miles per hour as the case may be. It is, I believe, a matter of common knowledge that enforcement of the statute by police officers depends upon the individual officer's judgment, some officers enforcing the slightest infraction and others tempering enforcement depending on the amount of excess speed and road and traffic conditions. I am sure that any court would take judicial notice that speeds as high as sixty miles an hour, or speeds five miles in excess of the speed limit in more restricted areas, while violating the statute would not under proper road and traffic conditions constitute such a serious traffic law violation as would justify withholding a mandatorily revoked license for an extra six months without giving the applicant an opportunity to be heard and certainly without some evidence that a thorough and fair investigation had been made.

The possible effect of the requirement of section 56 for a mandatory revocation after conviction of three violations within eighteen months is well stated in the case of *City of Rochester* v. *Falk* (170 Misc. 238, 242). The present case involves only three violations of section 56 for speeding and there is nothing before me indicating that the violations were in any sense serious ones — no accident resulted therefrom.

It is not the purpose of this opinion to indicate that under proper circumstances, an operator's license should not be refused at the expiration of six months after the same has been revoked for speeding but there must be facts and circumstances

surrounding the speeding violation which would warrant such determination. Such circumstances should appear and findings of fact should be available upon which such determination was made. If a hearing is held, the petitioner should be given an opportunity to be heard, to controvert any charges which were made against him and to present such evidence as he felt necessary to assure a full and complete consideration of his case. In the event that he felt aggrieved at such determination he would then be in a position to challenge the same and the court would have a record from which a proper determination could be made. Without any other grounds appearing therefor than the fact that he was convicted three times of speeding, the determination which is complained of was made, namely, that he must go without an operator's license for six months more and then must reapply without any assurance that the same determination might not again be made. Although this proceeding has been instituted to review such determination and an answer has been interposed by the Commissioner of Motor Vehicles, no question of fact is presented requiring a trial and none has been requested. No facts have been presented in the answer or by affidavit indicating any other basis for the determination than are stated in the petition or are contained in the application blank. Therefore, it can only be assumed that there is no other basis. In the absence thereof, I am of the opinion that the action of the commissioner in refusing to grant the application for an operator's license was unreasonable, arbitrary and capricious. His action in denying such application is, therefore, annulled and permission granted to the petitioner to reapply at this time for the issuance of an operator's license, which shall be entertained in accordance with the provisions of this decision.

Order accordingly, with $10 costs.