J. Irwin Shapiro, J.
Petitioner, who had been the holder of a chauffeur’s class 2 license to operate motor vehicles, brings this article 78 proceeding to “ reverse the decision of respondent [Commissioner of Motor Vehicles] which denies petitioner the opportunity to renew his license ’ ’.
In support of the application, petitioner alleges, inter alia, that on December 24, 1965 he had a minor accident while operating his automobile; that he reported this accident to the Department of Motor Vehicles but not to his insurance company because there was no damage to his automobile; that he made an arrangement to pay to the owner of the other automobile the cost to repair it and carried out that agreement; and that he heard nothing further about this accident until September 4, 1968, when he received a notice from respondent denying his application to renew his chauffeur’s license because of an outstanding order dated August 17, 1966 revoking that license. Petitioner also alleges that he then ascertained, upon making inquiry at the Motor Vehicle Bureau and the Home Indemnity Company, that his insurance had been canceled on October 11, 1965, and that therefore he was uninsured at the time of the accident. It is undisputed that petitioner had been driving his automobile until September 4, 1968, during which period his license was under order of revocation although he claims that he was unaware of that fact.
As the predicate for the relief he seeks, petitioner contends that the order of revocation dated August 17, 1966 was for a period of one year; that it was effective from the date it was issued; and that therefore by its terms expired on August 17, 1967. Petitioner concludes that, in view of the expiration of the time during which his license was revoked, respondent’s determination constitutes a failure to renew the license pursuant to *845 section 501 (subd. 1, par. a) of the Vehicle and Traffic Law and that such denial was improper because respondent did not perform Ms statutory duty of “ examimng ” petitioner before denying the renewal. Petitioner also claims that the denial by respondent is improper because respondent is proMbited from fixing an exact date in the future when petitioner may apply for renewal.
Respondent, in his answer, alleges that on November 16, 1965, there was received from petitioner’s insurer notice of termination of the insurance covering the operation of petitioner’s automobile; that he then notified petitioner that pursuant to section 318 of the Vehicle and Traffic Law his registration was revoked for failure to carry liability insurance at all times and that he must immediately surrender the certificates, plates and validation sticker of his registration; that petitioner never reported an accident he had on December 24, 1965, wMle operating his automobile; that subsequently, on August 17,1966, pursuant to section 318, he revoked petitioner’s registration and chauffeur’s license and petitioner was directed to surrender his automobile registration and driver’s license immediately upon receipt of that order; and that proper notice of such action was given to petitioner. Respondent’s contention in opposition to the petition is, in sum, that petitioner is barred from obtaining a new license until he complies with the outstanding order of revocation that he surrender Ms registration stubs, number plates (and tab) and/or both stubs of his driver’s license to the Department of Motor Vehicles.
For the following reasons I agree with respondent:
In resolving the question presented, it is the court’s function to acMeve a result consonant with the public policy wMch underlies the unmistakable scheme and intent behind the enactment hy the Legislature of the VeMcle and Traffic Law. That policy is “to protect the public on the highway against the operation of motor veMcles by financially irresponsible persons ” (Matter of Bookbinder v. Hults, 19 Misc 2d 1062, 1063). As was stated in Matter of Stevens v. Hults (41 Misc 2d 168, 170): ‘ ‘ The supervening public interest that attaches to the contract of insurance (Vehicle and Traffic Law, § 313) relates, as does the entire scheme of the compulsory insurance law, to the protection of the public. ’ ’ In furtherance of this public policy, it said in Stevens (supra, p. 169): “Article 6 further provides that the owner of a motor veMcle shall maintain proof of financial security continuously throughout the period of registration * * *. The statute is mandatory. He is not required, nor permitted, to determine controverted questions *846 of fact as are raised in this petition. The beneficial purposes of the statute would be considerably weakened if it were otherwise.” In the same vein, in Bookbinder {supra, p. 1065) the court said: “ This section is clear, reasonable and understandable. It does not give the Commissioner unfettered discretion which may be interpreted by him as he pleases, but imposes upon him a mandatory duty to revoke the privilege set forth upon receipt of evidence of the operation of a vehicle when proof of financial security was not in effect.” (Emphasis supplied.)
It has been held that the order of revocation of a license is effective from the time of the issuance of the order of revocation (see Matter of Blackburn v. Macduff, 206 Misc. 393, 398) or from the time of receipt of the order of revocation by the license holder. (See Matter of Petrzala v. Fletcher, 199 Misc. 688.) Similarly, in Matter of Bennage v. Kelly (2 Misc 2d 910), where petitioner contended the Vehicle and Traffic Law required that the 'Commissioner cause the license to be secured if it is not surrendered immediately and that revocation is not effective until such physical possession is accomplished, it was held that such a rule would place upon the Commissioner an intolerable burden and render inoperative the legislative intent.
Here, too, the legislative intent and underlying purpose of the Vehicle and Traffic Law and declared public policy of the State in its enactment must be the guide towards resolution of the claim here. That purpose and public policy is, as above stated, “ to protect the public on the highway against the operation of motor vehicles by financially irresponsible persons ”.
Section 318 of the Vehicle and Traffic Law imposes a mandatory duty upon the Commissioner to revoke the driver’s license of a person who operates a motor vehicle upon a public highway without adequate financial security as spelled out by the statute. Here it is conceded by petitioner that he operated his automobile during a period when he did not have any insurance, and that during that period he had an accident. It also appears that petitioner even continued to operate his automobile continuously without insurance after August 17, 1966, when his license was ordered revoked and he was ordered to turn it in. Consequently, the determination of the Commissioner, which had the effect of extending the period of revocation of petitioner’s license by the time during which petitioner illegally operated his automobile with a license which had been ordered revoked, was in furtherance of that duty imposed upon the Commissioner by section 318 to carry out the public policy of *847 the State. I hold that the period of suspension ordered by the revocation, while operative immediately, did not begin to run so far as a renewal of petitioner’s license was concerned, until petitioner’s Ucense and registration plates were surrendered in accordance with the notice of revocation. This, it seems to me, is the only proper result in view of the public policy which underlies article 6 of the Vehicle and Traffic Law. Any other concept — particularly the One postulated by petitioner — would render meaningless the sanction designed by the statute to implement the express public policy of the State; the statute would become a mere empty shell and would rob it of the force a sanction is designed to have. The public purpose of the statute would be entirely negated if the petitioner’s views were accepted.
Accordingly, judgment is directed in favor of respondent dismissing the petition.