In the Matter of GEORGE R. WIGNALL, Respondent, against CLIF-FORD J. FLETCHER, as Commissioner of Motor Vehicles of the State of New York, Appellant.

Argued October 10, 1951; decided January 24, 1952.

436

*Nathaniel L. Goldstein, Attorney-General (John R. Davison, Wendell P. Brown* and *Philip J. Fitzgerald* of counsel), for appellant. The Appellate Division erred (1) in holding (a) that the statute was designed to give the holder of a license an opportunity to be heard before revocation, and (b) that petitioner was entitled to cross-examine the road-test examiner and to present evidence of his own; (2) in ordering the matter remitted to the commissioner for a further hearing, and (3) in instructing the commissioner to make findings. (*Matter of Marburg* v. *Cole,* 286 N. Y. 202; *People* v. *Rosenheimer,* 209 N. Y. 115; *Reitz* v. *Mealey,* 314 U. S. 33; *Matter of Romaner* v. *Williams,* 270 App. Div. 948, 296 N. Y. 637; *Matter of Sacharoff* v. *Corsi,* 294 N. Y. 305, 326 U. S. 744; *Matter of Small* v. *Moss,* 277 N. Y. 501; Benjamin on Administrative Adjudication in State of New York, Vol. I, pp. 351–359; *Matter of Erlanger* v. *Regents of Univ. of State of N. Y.,* 256 App. Div. 444, 281 N. Y. 627; *Matter of Rosenberg* v. *Board of Estimate,* 257 App. Div. 839, 281 N. Y. 835; *Matter of Larkin Co.* v. *Schwab,* 242 N. Y. 330; *People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92; *Matter of Strauss* v. *Hannig,* 256 App. Div. 662, 281 N. Y. 612; *Foley* v. *Equitable Life Assur. Soc.,* 290 N. Y. 424.)

*Johnson S. Albright* for respondent. I. A driver's license should not be taken away except by due process. (*New York Water Service Corp.* v. *Water Power & Control Comm.,* 283 N. Y. 23; *Matter of New York Tit. & Mtge. Co.,* 277 N. Y. 66; *Matter of Friedel* v. *Board of Regents,* 296 N. Y. 347.) II. Licenseholder should be confronted with and have right to cross-examine the witness against him, and present his own evidence if any. (*Matter of Yates* v. *Mulrooney,* 245 App. Div. 146; *Matter of Greenebaum* v. *Bingham,* 201 N. Y. 343; *Matter*

*of Brenner* v. *Bruckman,* 253 App. Div. 607, 278 N. Y. 503; *Matter of Kafka* v. *Fletcher,* 272 App. Div. 364.) III. Definite findings should have been made after the hearing. (*Matter of Elite Dairy Products* v. *Ten Eyck,* 271 N. Y. 488; *Matter of New York Water Service Corp.* v. *Water Power & Control Comm.,* 283 N. Y. 23; *Matter of Guernsey Breeders Co-op.* v. *Noyes,* 284 N. Y. 197; *Matter of Dusinberre* v. *Noyes,* 284 N. Y. 304; *Matter of Collins* v. *Behan,* 285 N. Y. 187; *Matter of Scudder* v. *O'Connell,* 272 App. Div. 251.)

FROESSEL, J. Petitioner is a farmer. Except for the first two months of his life, he has lived in the towns of Marion and Walworth in western New York for eighty years. He alleges that he has driven an automobile since 1910 and has always been licensed to drive, has always carried liability insurance, and never had an accident until 1948, when a young boy ran into the road and into the rear end of petitioner's car. He felt the jar, immediately stopped, and thereafter reported the accident to a deputy sheriff. The boy's injuries were not serious. There is not a scintilla of evidence in the record showing any negligence on petitioner's part.

On May 17, 1949, appellant Commissioner of Motor Vehicles ordered petitioner to appear for a hearing at Lyons, New York. The notice stated that such hearing would be held " Pursuant to Section 71 of the Vehicle and Traffic Law  *  *  *  to investigate accident on 10/10/48 at Monroe Co. and to determine whether or not your license  *  *  *  should be suspended or revoked." The notice contained the following note: " The principal purpose of this hearing is to determine if your physical condition is such that you may safely operate a motor vehicle on the highways."

It appears that the hearing was scheduled under paragraph (b) of subdivision 3 of section 71 of the Vehicle and Traffic Law, dealing with permissive suspensions and revocations " because of some physical  *  *  *  disability of the holder ". That subdivision also provides: " Where revocation or suspension is permissive, the holder shall have an opportunity to be heard ", and in subdivision 6 it is provided: " Revocation or suspension hereunder shall be deemed an administrative act reviewable by the supreme court as such." Provision is also made for notice of hearing and compulsory attendance of witnesses.

The hearing was held on June 2, 1949, and the *original* report contained the following: " Remarks: This man is eighty-two years of age but seems to be in good condition despite his advanced years. However, I feel that it is best for him to take a road test." After the word " Decision " there was typewritten: " Make arrangements for road test. If he passes case can be closed, otherwise license revoked." A road test was given, not at Lyons, the place of hearing, but in the city of Rochester in the vicinity of the " Four Corners ". The petitioner failed the test, not because of " Physical Defects ", " Accident ", or any " Serious Violation ", but because of " W T L " (wrong traffic lane), apparently while making a left turn, denominated as " Dangerous Action ", and lesser infractions, adding up to 28 points where only 15 were allowed. Thereupon the original decision above quoted was stricken out and in its place handwritten: " 7/5/49 — Revoke license — Failed test ". Petitioner was thereupon notified that he had failed the road test " pursuant to Section *20-8* of the Vehicle & Traffic Law ", under which section no proceeding had been instituted. (Italics supplied.) It will be noted that under the latter section lesser penalties might have been imposed, such as suspension or restriction, but the commissioner determined upon " revocation " even in advance of the failure of the test.

In petitioner's first proceeding to review, the determination of revocation was annulled by the Appellate Division and the proceeding remitted " for a further hearing and with instructions to the commissioner to make findings in support of whatever determination he may reach upon the evidence " (277 App. Div. 828). His license was thereupon restored to him and reissued. A further exceedingly brief hearing was held on June 1, 1950, under the same Motor Vehicle Bureau case number as the section 71 proceeding, and he was simply directed to take another road test on Main Street in Rochester. Again petitioner is said to have failed as before, chiefly because of his handling of the automobile in making left turns at intersections. Despite the difference in traffic conditions, the examiner " noted " that petitioner's faults " are not predominantly of the type which would not be apparent at a test post outside Rochester." On this occasion, two licensed operators accompanied petitioner, and they stated that he " drove his car perfectly ". Brief findings

.were made under the same case number, obviously as part of the section 71 proceeding. Petitioner thereupon received the same notice of revocation, namely, under subdivision 8 of section 20 and not under section 71 of the Vehicle and Traffic Law.

He thereupon instituted the present proceeding to review the second determination, which the Appellate Division again annulled, declaring that petitioner was never " given an opportunity to test, by cross-examination, the accuracy of the facts and conclusions as reported by the road-test examiner, or to offer any evidence of his own in contradiction or explanation ". (278 App. Div. 28, 30.) The appeal from this determination is now before us.

Appellant contends that the Appellate Division erred in making its order, in that a hearing under section 71 was concluded and that all subsequent proceedings were taken under subdivision 8 of section 20, which requires no hearing but simply an objective test on the licensee's qualifications. In this view, it is claimed that petitioner's remedy in the event of arbitrary or illegal action by the commissioner would rest in a proceeding in the nature of mandamus, and any factual issue therein would be a matter for determination by Special Term under section 1296 of the Civil Practice Act. Accordingly, it is appellant's position that the Appellate Division erred in law in any event, since the proceeding should not have been remitted for further administrative hearing and findings, but should have been dismissed or at most sent back to Special Term for trial of any issues of fact found to have been raised.

In the view we take of this case, we do not reach the question as to the nature of the right of review where the proceeding is commenced under subdivision 8 of section 20 as distinguished from a section 71 proceeding. A comparison of subdivision 8 of section 20 and section 71 of the Vehicle and Traffic Law shows that they are concerned with separate and distinct methods of procedure. Although they appear to provide alternative procedures for dealing with the same situation, their validity may not for that reason be drawn in question (see *Matter of Sacharoff* v. *Corsi*, 294 N. Y. 305, certiorari denied 326 U. S. 744). In this case, however, the commissioner proceeded under paragraph (b) of subdivision 3 of section 71, the purpose of the hearing being

to determine petitioner's physical condition, and he was found in good condition despite his advanced years, but his license was revoked under subdivision 8 of section 20.

We are here dealing with the exercise of power by the commissioner in the revocation of a driver's license, and our decision will apply not only to this petitioner, but may affect any other holder of a driver's license in the State of New York. A license to operate an automobile is of tremendous value to the individual and may not be taken away except by due process. If in the instant case it may be done loosely and informally and without regard to the statutes in such case made and provided, then it may be done in any case, and every automobile driver in the State will be at the mercy of the commissioner and his assistants. However much we may recognize the need for the rightful exercise by the commissioner of his duties in his laudable effort to prevent unsafe driving on the highways, it would be a dangerous step indeed if we permitted him to follow any loose practice formulated by him, regardless of the law. Due process required that petitioner be duly informed under what statute he was being proceeded against. In the second hearing in the section 71 proceeding, he was simply directed to take another road test. Such direction is not in compliance with the statute.

The danger in commingling these proceedings was recognized in the brief of the Attorney-General when he said: " Sections 71 and 20, subdivision 8, of the Vehicle and Traffic Law are independent provisions, each dealing with a separate problem. There is no indication of a legislative intent that these two forms of procedure are to be merged." Yet, that is precisely what was done here.

As before noted, even before the first road test was taken the commissioner decided that in the event of petitioner's failure the license would be revoked, without taking into consideration the lesser penalties provided by subdivision 8 of section 20. The record before us must be examined in the light of what appellant did, not what might have been done under some other statute (*Matter of Hickox* v. *Griffin*, 298 N. Y. 365, 371; *Securities Comm.* v. *Chenery Corp.*, 318 U. S. 80, 87–88). When the commissioner chose to proceed under section 71, orderly procedure as intended by the Legislature would require that he

should not make a determination under subdivision 8 of section 20 (see *Matter of Sacharoff* v. *Corsi, supra,* p. 311). Moreover, fairness required that due notice be given to the licensee that the commissioner regarded the section 71 proceeding as terminated and had initiated a subdivision 8 of section 20 proceeding.

In this case, petitioner was prepared by the original notice of hearing to meet a specific issue in a proceeding in which he was clearly entitled to an administrative hearing. It is not strange, then, that both parties and the Appellate Division treated the determination as one made in such proceeding. Under these circumstances, we cannot say that the Appellate Division erred as a matter of law.

It also may be noted that such confusion of the two statutes within the Motor Vehicle Bureau as shown here is in itself potentially harmful. Under section 71, suspension or revocation is the only penalty provided; under subdivision 8 of section 20, the commissioner may impose a milder sanction, such as '' restrictions on the use of the license '', as, for example, limiting this licensee to the vicinity of his village or town. Petitioner stated that he desired to drive only in the locality in which he lived and for the essential purposes of attending at the village stores, taking his invalid wife to church on Sundays, and the like. If so little consideration is given to the form of procedure, it may also happen that little consideration is given to the form of sanction imposed, and indeed in this case the penalty was prematurely prescribed. This practice clearly violates the legislative intention, as evidenced by the provision for separate forms of proceedings.

In our opinion, the Appellate Division was justified in treating the determination as one made in a section 71 proceeding. Since appellant has given a stipulation for order absolute in the event of affirmance, the order should be affirmed and order absolute directed.

The appeal from the first order of the Appellate Division, dated May 2, 1950, should be dismissed, as the second order, dated March 6, 1951 — itself an intermediate order — was obtained in a new and independent proceeding.

On the appeal from the second order: The order should be affirmed, and order absolute ordered against the appellant on the stipulation, with costs in all courts.

DESMOND, J. (dissenting). On October 10, 1948, an automobile driven by petitioner-respondent, then eighty-one years old, injured a child. On May 17, 1949, pursuant to authority contained in section 71 of the Vehicle and Traffic Law, respondent-appellant, the State Commissioner of Motor Vehicles, served on petitioner a notice requiring the latter to attend a hearing called for the purpose of investigating the accident and of determining whether petitioner's license as an automobile operator should be suspended or revoked. The notice of hearing stated that it was the practice of the bureau to hold such a hearing " where the operator involved in an accident is sixty-five years of age or over." That hearing, held on June 2, 1949, resulted in a report to the commissioner, by the examiner who conducted it, that petitioner " seems to be in good condition despite his advanced years " but that the examiner believed that petitioner should be required to take a " road test." (Some importance seems now to be attached to the fact that no formal notice was ever given to petitioner that this section 71 hearing was closed — we see no necessity for, or utility of, any such notification.)

What the commissioner did send to petitioner, after that section 71 hearing, was a letter dated June 14, 1949, informing petitioner that he would have to submit to a road test on June 24, 1949. The test was given him on that date, he failed to pass it, and his driving license was revoked. As the result of a litigation with the bureau which petitioner then commenced, that revocation was set aside by the Appellate Division (277 App. Div. 828); petitioner was, a year later, given another such test, and again failed. Again the Appellate Division set aside the revocation, remitting the matter to the commissioner for " a further hearing " and for the making of " findings " (278 App. Div. 28, 31). The commissioner was, understandably, reluctant to continue the testing process indefinitely, and so appealed to this court, being required on this appeal, since the order was nonfinal, to file a stipulation for order absolute, in case of affirmance. Thus, the affirmance which this court is about to order will mean that petitioner, now eighty-four years old, continues

to hold an automobile operator's license, although he has twice been unable to pass the usual, routine, driving license tests, the necessity for which arose from his advanced age, and which had been confirmed by petitioner's own statements that when, in daylight on a country road, his car injured a child, he did not even know of the occurrence until he looked back and saw people picking up the child from the road.

Of course, the commissioner, after this decision by us, can, we assume, order that still another road test be given to petitioner (three years after the accident) but we see no reason for setting aside the first two determinations. We do see the compelling necessity of a workable system of operator-license control, in a State where there are 4,000,000 such licenses outstanding and where 100,000 accidents (30,000 involving pedestrians and 2,000 fatal) were reported in 1950 (see N. Y. Legislative Manual, 1951).

Section 71 of the Vehicle and Traffic Law, under which petitioner was originally notified to attend a hearing, and under which that hearing was held, specifically authorizes the commissioner to take such action. That section 71 hearing was duly held, but it resulted in no revocation or suspension of petitioner's license, and in no way prejudiced him or affected his rights. However, the hearing examiner did consider it advisable that petitioner be subjected to a road test. Authority for such " reexamination of licensees " is given the commissioner by subdivision 8 of section 20 of the same Vehicle and Traffic Law. In plainest language that subdivision empowers the commissioner, if he " has reasonable grounds to believe that a person holding a license issued pursuant to this section is not qualified to operate a motor vehicle," to " require such person to submit to an examination to determine his qualifications." Petitioner has now had two such re-examinations, and has not passed either of them. Each time the examiner's report showed him guilty of serious driving faults, including improper turns, improper speed at intersections, delayed braking, inattention to traffic signs and lights, etc. Such determinations by a competent licensing authority can be upset by the courts only on a showing that they were made arbitrarily, capriciously, maliciously or corruptly (see *Matter of Small* v. *Moss,* 277 N. Y. 501, 507; *Matter of Stracquadanio* v. *Department of Health,* 285

N. Y. 93, 95, 96). There is no possible basis in this record for so condemning these re-examination results, and we do not understand that anyone claims there is. Surely this petitioner has not shown a clear, legal right to hold an operator's license. The courts, therefore, have no power to set those results aside.

True, after the Appellate Division had annulled the first revocation, and after the second re-examination had been given and failed, petitioner in his next petition to the Appellate Division, asserted that he had in fact driven his car safely and properly during the second re-examination, and produced affidavits to that effect, made by two persons who had accompanied him in his car during that latest road test. But the opinions of those persons as to petitioner's competency were no proof of arbitrariness or capriciousness of the examiner, and so raised no triable issue of fact for any court (*Matter of Marburg* v. *Cole,* 286 N. Y. 202, 211). The commissioner, not the courts, examines and licenses operators, and for a court or the commissioner himself to hold a later " hearing " to review the announced result of a road test is to do something not contemplated by any statute, and something which, we submit, would defeat the purpose of the road test. Decisions dealing with court review of findings of fact made on disputed testimony at hearings required by statute, have nothing to do with a situation like this.

As we understand this court's decision on this appeal, however, the Appellate Division's annulment of the commissioner's actions is being affirmed here, not because of any supposed necessity for hearings or findings by the commissioner, but for an entirely different reason. This court's reason for affirmance is based solely on the fact that the commissioner, after notifying petitioner of, and holding, a hearing under section 71, then proceeded, without formal notice of termination of that section 71 hearing, to order a road test under section 20. But those statutes authorize and direct the commissioner to do both those things, independently of each other or both at once, and there is no sign that anyone was confused or prejudiced or bothered by the way in which the commissioner performed these simple, routine duties assigned to him by the Legislature.

The order should be reversed and the proceeding dismissed, with costs in all courts.

LEWIS, CONWAY and DYE, JJ., concur with FROESSEL, J.; DESMOND, J., dissents in opinion in which LOUGHRAN, Ch. J., and FULD, J., concur.

Ordered accordingly.