G. FRED BECHLER, PLAINTIFF, v. NED J. PARSEKIAN, ACTING DIRECTOR OF THE DIVISION OF MOTOR VEHICLES, AND THE STATE OF NEW JERSEY, DEFENDANTS.

Argued October 9, 1961—Decided December 11, 1961.

243

244

*Mr. Edward Stanton* argued the cause for the plaintiff.

*Mr. David D. Furman,* Attorney General of New Jersey, argued the cause for the defendants (*Mr. David M. Satz, Jr.,* First Assistant Attorney General, of counsel; *Mr. G. Douglas Hofe, Jr.,* Deputy Attorney General, and *Mr. Maurice R. Strickland,* Legal Assistant, on the brief).

The opinion of the court was delivered by

JACOBS, J.   On February 9, 1959 the plaintiff G. Fred Bechler was involved in a reportable accident.   See *N. J. S. A.* 39:4–130.   He was then 62 years of age.   On February 1, 1960 the Division of Motor Vehicles sent a letter to the plaintiff advising him that the Division had a policy of reexamining all drivers involved in fatal accidents or in two accidents within a period of one year and "all drivers over age 60 who have been involved in one reportable accident, regardless of responsibility."   The letter enclosed a physical examination form to be completed by a New Jersey physician of the plaintiff's choosing and requested the plaintiff to appear with the completed form at the Wayne Township Accident Prevention Clinic for a "review driver's examination."   In response, the plaintiff sent a vitriolic letter dated February 5, 1960 in which he attacked the Division's policy, particularly that

portion of it which grouped drivers over 60 who had been involved in one reportable accident, regardless of responsibility. His letter described six earlier accidents in which his car had been involved, and in all of them, according to his descriptions, he was standing still and was not at fault.

On February 25, 1960 the Division acknowledged the plaintiff's letter and advised him that the reports relating to the accident of February 9, 1959 had been rechecked and that the plaintiff was clearly subject to reexamination under the Division's policy. A new appointment for the reexamination was scheduled and the Division expressed the hope that the plaintiff would find the new time convenient. On March 11, 1960 the plaintiff advised the Division that he considered the reexamination requirement to be unjust and that he declined to appear. On April 5, 1960 the Division advised the plaintiff that his appearance could not be waived and that a new appointment would be fixed upon his request. On May 19, 1960 the Division notified the plaintiff that his failure to reply to the letter of April 5 indicated an unwillingness to cooperate and that the revocation of his driving privilege would be recommended. On May 24, 1960 the plaintiff wrote to the Division again attacking its policy and offering to cooperate in any investigation seeking to ascertain who was at fault in the accident of February 9, 1959.

On July 25, 1960 the Division notified the plaintiff of the revocation of his license because of his "failure to appear for driver's reexamination." The revocation was effective July 30, 1960. On August 16, 1960 Governor Meyner announced that he planned to appoint a committee to study the reexamination program and that, pending the results of study, the Division had taken steps towards the establishment of procedures which would screen accident reports more thoroughly. He stated that where the driver "is not apparently at fault and if his prior record is a good one, the reexamination would not be required"; he also stated that there would be no reexamination where

other evidence indicated that the motorist was a safe driver, or where the motorist's car involved in the accident was parked or standing still or "clearly had the right of way." Following the Governor's announcement, the Division reviewed the plaintiff's record and concluded that it was in the public interest that the plaintiff be required to submit to a reexamination. This conclusion was based upon the "driving record" of the plaintiff "on file with the Division of Motor Vehicles, upon the additional information furnished by the plaintiff in his letter of February 5, 1960, and upon the accident in which the plaintiff was involved on February 9, 1959"; this accident, in the Division's opinion, did not fall in the category referred to by the Governor of "accidents involving a parked car, a car standing still at a stop light or a car which clearly had the right of way."

■ On September 14, 1960 the plaintiff filed a petition for declaratory judgment in the Appellate Division of the Superior Court. See *R. R.* 4:88–10; *cf. R. R.* 4:88–8(a); *Carls v. Civil Service Commission of N. J.*, 17 *N. J.* 215, 219-220 (1955).[1] His petition alleged that the Division's reexamination policy, in effect at the time his license was revoked, "or at least the portion of said policy dealing with the reexamination of drivers over age 60" is "illegal, unconstitutional and void" under the "equal protection, due process and right of privacy provisions" of the Federal and State Constitutions. It alleged that the reexamination policy in effect after the Governor's announcement on August 16, 1960 was void under the same constitutional provisions and for the additional reason that it was "too vague, ambiguous and subject to capricious and discrimina-

---

[1] As in *Carls, supra*, at *p.* 219, we shall not permit the procedural issue to detain us although it seems clear that after the order of revocation was entered, plaintiff's review should have been by appeal under *R. R.* 4:88–8(a) rather than by petition for declaratory judgment under *R. R.* 4:88–10. See *In re Berardi*, 23 *N. J.* 485, 490 (1957); *State Board of Medical Examiners v. Weiner*, 67 *N. J. Super.* 199, 204 (*App. Div.* 1961); *Id.*, 68 *N. J. Super.* 468, 471 (*App. Div.* 1961).

tory application." His petition prayed that the reexamination policy, or that portion of it relating to the reexamination of drivers over age 60, and the revocation of his license, be adjudged "illegal, unconstitutional and void." In due course, the Division filed its answer to the petition, together with a formal record which consisted of copies of all of the pertinent documents in the Division's files and an affidavit by the Acting Director concerning the proceedings in the Division. Thereafter the plaintiff applied for (1) *ad interim* relief restoring his license pending the outcome of this proceeding, (2) leave to file affidavits with respect to the plaintiff's physical condition, his prior accident record and questions of fault, (3) leave to supplement the record with accident statistics, (4) leave to subpoena witnesses and (5) leave to amend the petition. The defendants applied for an order dismissing the plaintiff's action. On January 11, 1961 both applications were denied by the Appellate Division which, on its own motion, raised the question as to whether the Division had any statutory authority to conduct its reexamination program. Permission was granted to the plaintiff to amend his petition to embody this issue and on January 26, 1961 the petition was amended accordingly.

On March 21, 1961, the Acting Director issued a notice to his Inspection Force which advised that, effective immediately and pending the report of the Governor's committee, the following criteria would be used in scheduling motorists "who have been involved in accidents to appear for Accident Prevention Clinic examinations: (1) motorists who have had two reportable accidents within one year, regardless of age, will be called in for a clinic reexamination, subject however to the screening standards which were made effective in August of 1960; (2) motorists who have been involved in one accident and who have not had a driver license test and vision check by the Division of Motor Vehicles for thirty years past will be required to submit, on forms prescribed by the Division of Motor

Vehicles, a vision check by a licensed ophthalmologist, optometrist or oculist; (3) motorists who have been involved in one accident in which it is indicated that his or her physical disability was a contributing factor to the accident."

While the plaintiff's petition was awaiting hearing in the Appellate Division, we certified the cause on our own motion. *Cf. N. J. Const., Art.* 6, § 5, *par.* 1(d); *R. R.* 1:10–1(a). See *Lampert Dairy Farm, Inc. v. Hoffman,* 35 *N. J.* 205, 206 (1961); *Brookchester, Inc. v. Ligham,* 17 *N. J.* 460, 462 (1955); *Stuyvesant Town, Inc. v. Ligham,* 17 *N. J.* 473, 475 (1955). We heard oral argument and during the course thereof suggested that the Division might wish to embody its reexamination policy in formal rules or regulations. Thereafter the Division promulgated, and filed with the Secretary of State, the following regulation (see *N. J. Const., Art.* 5, § 4, *par.* 6):

"The Director of the Division of Motor Vehicles of the Department of Law and Public Safety by virtue of the authority vested in him under the provisions of Section 39:3–10 and Section 39:5–30 of the Revised Statutes of New Jersey hereby makes and promulgates the following Regulation.

The Director may require persons who operate motor vehicles on the highways of this state to be reexamined in accordance with the program of the Accident Prevention Clinic to determine their ability to operate safely. Reexamination may be required in those instances covered by any of the following categories:

1. Persons involved in two or more traffic accidents within a period of 12 months.

2. Persons involved in a traffic accident resulting in a fatality where a violation of the traffic regulation provisions of Title 39 is established.

3. Persons involved in one traffic accident having a record of two or more convictions for moving traffic violations within a period of 12 months.

4. Persons eligible to the restoration of their driving privilege after a conviction of operating or permitting another person to operate a motor vehicle while under the influence of intoxicating liquor or any narcotic or habit-producing drug, as provided in *L.* 1952, *c.* 286 (*R. S.* 39:4–50).

5. Persons having either a mental or physical deficiency which may affect their safe operation of a motor vehicle.

6. Persons who have a driving record, involving two or more traffic accidents or moving violations, which indicates a need for re-examination to determine if they are capable of operating a motor vehicle with safety to themselves and to other users of the highways.
· The Director may require a vision examination, by a New Jersey licensed doctor of medicine or optometrist, of persons involved in one traffic accident who have not had a vision check by Division personnel within the 10-year period immediately preceding the date of the accident.

For the purposes of this regulation, the definitions of the words and phrases found in *R. S.* 39:1–1 are herein adopted and made fully applicable to the language and context of this regulation in addition to the following:

'Traffic Accident' means an accident which is required to be reported under the provisions of *R. S.* 39:4–130.

'Moving Traffic Violation' means a violation of the provisions of Title 39 where actual operation and movement of a vehicle is an element of the statutory violation.

This regulation shall take effect on October 13, 1961."

Under date of October 13, 1961, the Division sent a copy of its regulation to the plaintiff and requested that he appear with a completed physical examination form for an Accident Prevention Clinic reexamination on November 3, 1961. The Division's accompanying letter advised that if there was any question in the plaintiff's mind as to the applicability of the regulation to his case, it would be pleased to afford him an opportunity to discuss the matter.

The first legal point advanced before us by the plaintiff is that there is no statutory authority to support the Division's reexamination policy and regulation. The defendants urge that while the statute contains no specific reference to reexaminations, it does contain comprehensive general provisions which furnish ample statutory basis for the Division's policy and regulation. See *N. J. S. A.* 39:3–10; 39:3–11; 39:5–30; *cf. R. S.* 39:2–3; *N. J. S. A.* 39:2–6; *Hinnekens v. Magee,* 135 *N. J. L.* 537, 538 (*Sup. Ct.* 1947); *Tichenor v. Magee,* 4 *N. J. Super.* 467, 471 (*App. Div.* 1949). See also *Commonwealth v. Walkinshaw,* 373 *Pa.* 419, 96 *A. 2d* 384 (*Sup. Ct.* 1953); *but*

cf. *Carnegie v. Department of Public Safety*, 60 *So. 2d* 728 (*Fla. Sup. Ct.* 1952). *N. J. S. A.* 39:3–10 provides that no person shall be licensed to drive until he has passed a satisfactory examination as to his ability as an operator; it sets forth that the Director of the Division, upon receipt of the lawful fee and upon being satisfied of the applicant's ability as an operator, "may, in his discretion, license the applicant to drive a motor vehicle." The license is issued for a one or three-year period although the Director may, for good cause, issue a license to expire on a specified date no sooner than 5 months nor later than 41 months from the date of issuance. The statute provides, in its fourth paragraph, that applications for renewal are to be made on forms prescribed by the Director; and it then provides, in its fifth paragraph, that the Director, in his discretion, may refuse to grant a license to a person who is, in his estimation, "not a proper person to be granted such a license," provided that no defect of the applicant shall bar him unless tests show that the defect "incapacitates him from safely operating a motor vehicle." *N. J. S. A.* 39:3–11 sets forth that whenever, in the interests of public safety, the Director determines that good cause appears therefor he may, in issuing any driver's license, impose thereon (a) any reasonable restrictions and conditions "in the light of the applicant's physical condition and driving ability," and (b) such other reasonable conditions or restrictions applicable to the applicant as the Director may ascertain by tests approved by him to be appropriate "to assure the safe operation of a motor vehicle by such applicant."

The Legislature is, of course, vitally concerned with the physical fitness and driving abilities of motor vehicle operators who are licensed by its delegated authority. That concern does not end with the issuance of original licenses to qualified drivers, for it is equally vital that the drivers remain so at all times and be fit whenever they apply for their renewal licenses. *Cf. Kennedy v. City of Newark*, 29 *N. J.* 178, 188 (1959). In *N. J. S. A.* 39:3–10 and

39:3–11, the Legislature vested in the Director comprehensive examination powers to ascertain physical fitness and driving ability, and those powers may not properly be confined to original licenses. Indeed, *N. J. S. A.* 39:3–10 has a paragraph which refers specifically to the procedure on applications for renewal licenses and which is followed immediately by a paragraph granting wide power to the Director to refuse a license to one who, in his estimation, is not a proper person to hold a license. While *N. J. S. A.* 39:3–11 does not specifically refer to renewals, it does broadly refer to the issuance of "any driver's license" and, in furtherance of the legislative goal, this is fairly to be construed as including renewal licenses. *N. J. S. A.* 39:5–30 authorizes the Director to suspend or revoke a license for violation of any provision of the Motor Vehicle Act, "or on any other reasonable grounds" which may be taken to include unfitness to drive. *Cf. Tichenor v. Magee, supra.*

██ It appears evident to us that if the Director is to discharge conscientiously his responsibilities under *N. J. S. A.* 39:3–10, 39:3–11 and 39:5–30, he must have and exercise adequate powers of reexamination as well as examination. *Cf. R. S.* 39:2–3; *Lane v. Holderman,* 23 *N. J.* 304, 315 (1957); *Cammarata v. Essex County Park Comm.,* 26 *N. J.* 404, 411 (1958). Practical necessities may preclude frequent periodic examinations and may require special classifications based on age, accidents, violations or other suitable standards which may be embodied in announced policies and in formal regulations. So long as the classifications and the standards are reasonable and reasonably administered, they should readily withstand judicial attack. See *New Jersey Restaurant Ass'n, Inc. v. Holderman,* 24 *N. J.* 295, 300 (1957); *Two Guys from Harrison, Inc. v. Furman,* 32 *N. J.* 199, 228 (1960). It is true, as the plaintiff points out, that in 1949 the Attorney General expressed the view that the Director had no statutory authority to require the reexamination of drivers over

40 years of age. See *Atty. Gen.*, Formal Opinion No. 107 (1949). In reaching this conclusion, the Attorney General referred only to *N. J. S. A.* 39:3–10 which at that time contained no specific mention of renewals; the present provision relating to the procedure to be followed on renewal applications was included by a later amendment. See *L.* 1955, *c.* 8, *p.* 45, § 5. Although the Attorney General noted that one guilty of a violation of the Motor Vehicle Act could have his license suspended or revoked, he did not cite *N. J. S. A.* 39:5–30 or refer to the fact that licenses could be revoked on other reasonable grounds. See *Tichenor v. Magee, supra.* In any event, the Attorney General later modified his view of the Director's reexamination powers as may be gathered from the following brief history of the Division's policies as they appear from official files.

In 1941 Commissioner of Motor Vehicles Magee initiated a departmental policy which called for the reexamination of drivers over 65 who were "involved in accidents." Apparently less than 25% of those who were examined under this policy came through with a "complete clean bill of health," and of the remaining 75%, some were issued conditional licenses and others surrendered their licenses rather than appear for examination. Following the receipt of the Attorney General's opinion in 1949, the aforementioned policy was discontinued but in 1953 Director Dearden of the Division of Motor Vehicles submitted new recommendations to the Attorney General for his approval. In a letter dated September 8, 1953 the Director requested approval of the reexamination of all motorists involved in two or more reportable accidents within a one-year period; the Director suggested that authority for such reexamination was contained in the provisions of *N. J. S. A.* 39:3–10 and *N. J. S. A.* 39:5–30. The Attorney General's approval was given under date of September 14, 1953. Under date of September 9, 1953 the Director requested approval of a program which would provide samplings of different age

groups of drivers. He noted that he had factual data as to the age group of 65 years and over, involved in accidents, and that such data clearly indicated the need for reexamination of this group. He then stated that he would like to summon for reexamination, a group of drivers between 60 and 65 who had been involved in accidents and at a later date younger groups who had been involved in accidents. Here the Attorney General's approval was also given under date of September 14, 1953. The Director's programs and policies were duly implemented through the Accident Prevention Clinics which have been operated in New Jersey since 1952. A progress report prepared by the Driver's Safety Service, Inc. indicates that from September 23, 1952 through June 30, 1959 almost 29,000 drivers had been processed through the clinics with highly satisfying results. The following excerpt, from an affidavit filed in this proceeding by the Acting Director, describes the current view of the Division with respect to their high purpose and effectiveness:

"The operation of the Accident Prevention Clinic Program contributes to highway safety in the State of New Jersey. The program is primarily oriented to the reeducation of drivers. It is a studied attempt to determine, through a series of tests, whether a driver who has had an accident or violation record, has physical deficiencies. If the tests indicate such deficiencies, the driver is informed of this fact and advised as to how he can compensate for the deficiency. For example, a person with tunnel vision may be advised that he cannot depend on side vision on approaching an intersection, but must actually turn his head slightly to the left and right to assure himself that the way is clear. Again, a driver with delayed reaction time may be advised to allow more than normal distance between his vehicle and the car ahead, as he is not able to observe and react with his foot brake, to a slowing and halting of traffic ahead within the time usually required. The program is primarily remedial rather than penal since no action is taken by this Division against a licensee solely on the basis of the clinical results. In the event that an individual is unable to satisfy the minimum requirements at the clinic he is referred to a regularly constituted driver examination station and there is given the same test as is administered to those initially applying for driver's licenses. Here, again, the policy is one of education and encouragement and license revocation is recommended only if the motorist is unable to demonstrate his ability to pass the

usual test. The Division permits such a motorist the opportunity to practice his driving and attempt to pass the road test at least twice before final revocation action is recommended."

See Carmichael, "Organization of the Driver License Function," *Traffic Digest and Review* (*Feb.* 1961), *p.* 17; Lawrence, "Physical Examination of Drivers in Pennsylvania," *Traffic Digest and Review* (*June* 1960), *p.* 17.

In his second and third legal points, the plaintiff attacks the Division's reexamination policies as being violative of the due process and equal protection clauses of the Constitution. No present purpose would be served by consideration of the earlier policies which have been completely displaced by the Division's regulation, effective October 13, 1961. That regulation omits the age classification[2] which has been the burden of the plaintiff's complaint as indicated in his petition for declaratory judgment. It sets forth other classifications, some of which do not concern us here though all seem on their face to have rational basis. See *Commonwealth v. Walkinshaw, supra,* 96 *A. 2d,* at *p.* 385; Carmichael, *supra.*[3] The particular classifi-

[2] Age classifications in reexamination programs are not at all uncommon and they have recently been adopted in our neighboring State of Pennsylvania. See Lawrence, *supra.* They are grounded upon the fact that the older age groups are more likely to suffer from vision and hearing defects, from slower reaction time, and from other declines and impairments which may tragically jeopardize their capacity on the highway. Although it is sometimes suggested that younger drivers may be responsible for more accidents than are older drivers, it has been noted elsewhere that accidents of the younger drivers are generally caused "by the head and not the body" and that their situation will perhaps best be met by better enforcement and stricter penalties rather than by more examinations.

[3] Compare the following comments by Assistant Director Carmichael of Northwestern University's Traffic Institute:

"With limited personnel available for renewal examination of drivers, the greatest traffic safety values will be attained by emphasis on review examination of those drivers who are involved in accidents, who repeatedly violate traffic laws, or who have physical or mental disabilities. Thorough review examinations of those most obviously in need of them is much more desirable than hurried, mass reexamination of dubious thoroughness or value." Carmichael, *supra,* at *p.* 17.

cation with which we are concerned, and under which the Division called the plaintiff for reexamination, is No. 6. That classification groups those "who have a driving record, involving two or more traffic accidents or moving violations, which indicates a need for reexamination to determine if they are capable of operating a motor vehicle with safety to themselves and to other users of the highways." This standard, though general, is neither obscure nor unjust, is probably as definite as the situation permits, and is legally sufficient. See *Ward v. Scott,* 11 *N. J.* 117, 123 (1952); *In re Berardi,* 23 *N. J.* 485, 491 (1957). To satisfy the constitutional requirements referred to by the plaintiff, the Division, in administering its standard, must act fairly, without invidious discrimination, and in accordance with fair procedures, although it admittedly has wide discretion as to the particular forms of procedures it may care to adopt. See *Laba v. Newark Board of Education,* 23 *N. J.* 364, 382 (1957); *In re Masiello,* 25 *N. J.* 590, 601 (1958). In calling the driver for reexamination, the notice should direct his attention to the particular classification in which he falls and it should advise him that, if he so requests, he may have a hearing to determine whether he falls within the designated classification and, if so, whether there are particular circumstances which obviate the indicated need for reexamination. Absent such request, no hearing would be required and the driver would, without more, be obliged to appear for the reexamination at the scheduled time unless a later time is agreed upon.

Although the Division's letter of October 13, 1961 did not, in explicit terms, state that a hearing could be had on request, it carried the same import when it notified the plaintiff that if he had any question as to the applicability of the regulation to his case, the Division would be pleased to afford him an opportunity to discuss the matter. In the event the plaintiff has not properly responded to the letter and has not appeared for the reexamination, the Division is at liberty to institute revocation proceedings

grounded on his failure to comply with the October 13 regulation. See *N. J. S. A.* 39:5–30; *Tichenor v. Magee, supra; cf. Kocses v. Magee,* 131 *N. J. L.* 499, 500 (*Sup. Ct.* 1944); *Vance v. State,* 67 *N. J. Super.* 63, 67 (*App. Div.* 1961). The plaintiff contends that such revocation proceedings must be accompanied by due notice and fair opportunity to be heard. We agree, although we note that in the ordinary case where a driver has wholly ignored the notice of reexamination, he may, in the reasonable exercise of the Director's discretion, be justly precluded in later revocation proceedings from introducing evidential issues such as his proper classification and his need for reexamination, issues which would have been considered and determined on the original call for reexamination. *Cf. Nemeth v. Otis Elevator Co., Inc.,* 55 *N. J. Super.* 493, 497–499 (*App. Div.* 1959). We believe, however, that the plaintiff here should not be so precluded in view of the fact that the October 13 letter was actually sent after oral argument in this court and while the legal issues relating to the statutory powers of the Division and the validity of its reexamination policies were under consideration and were awaiting our determination.

Earlier decisions took the position that licenses to operate motor vehicles may lawfully be revoked without prior notice and hearing. See *Garford Trucking, Inc. v. Hoffman,* 114 *N. J. L.* 522, 531 (*Sup. Ct.* 1935); *Nulter v. State Road Commission of West Virginia,* 119 *W. Va.* 312, 193 *S. E.* 549, 552, 194 *S. E.* 270 (*Sup. Ct. App.* 1937); *La Plante v. State Board of Public Roads,* 47 *R. I.* 258, 131 *A.* 641, 642 (*Sup. Ct.* 1926). They distinguished between rights and privileges and stressed that motor vehicle licenses are privileges which are not entitled to the same protection afforded to property rights. Their distinction is vigorously rejected by those who see no reason why the incidents of fairness which underlie procedural due process should not justly be applied to license holders without regard to whether their licenses are labeled as privileges

or property. See 1 *Davis, Administrative Law Treatise* §§ 7.18, 7.19 (1958); *Minkoff v. Payne,* 93 *U. S. App. D. C.* 123, 210 *F. 2d* 689, 691 *(D. C. Cir.* 1953); *Wignall v. Fletcher,* 303 *N. Y.* 435, 103 *N. E. 2d* 728, 730–731 *(Ct. App.* 1952); *Ratliff v. Lampton,* 32 *Cal. 2d* 226, 195 *P. 2d* 792, 10 *A. L. R. 2d* 826 *(Sup. Ct.* 1948); *cf. Adams Theatre Co. v. Keenan,* 12 *N. J.* 267, 278 (1953); *Metropolitan Motors v. State,* 39 *N. J. Super.* 208, 210 *(App. Div.* 1956). See also *State v. Moseng,* 254 *Minn.* 263, 95 *N. W. 2d* 6, 12–13 *(Sup. Ct.* 1959); Forkosch, *Administrative Law* 168-174 (1956). In the *Wignall* case, Judge Froessel pointed to the modern trend, which we consider to be a wholesome one; it recognizes that in to-day's society a license to operate an automobile may be of vital significance and value to the licensee and "may not be taken away except by due process" [303 *N. Y.* 435, 103 *N. E. 2d* 731] which requires that the licensee be fairly informed as to the charge against him and be afforded fair opportunity to be heard thereon. In *Gellhorn and Byse, Administrative Law—Cases and Comments* 759–779 *(4th ed.* 1960), the distinguished editors forcefully suggest (1) that not only the motor vehicle licensee but every licensee should have, prior to the complete withdrawal of the authority conferred upon him, "an opportunity to show cause why his license should not be revoked" and (2) that where, in the administrative agency's judgment, the protection of the public requires the immediate cessation of activities under the license, the agency should have and exercise the power to order a "summary *suspension* of the license pending an opportunity to the licensee to be heard on the question whether his authority should be permanently *revoked.*" See *pp.* 764–765.

█ In the light of all of the foregoing, we have concluded that here the Division failed to afford to the plaintiff legally sufficient notice and opportunity for hearing in the revocation proceeding which resulted in its revocation order, effective July 30, 1960. That order was not

preceded by any hearing or by any notice fixing the time and place for a hearing at which the plaintiff could show cause why his license should not be revoked. Accordingly, it must be and is hereby set aside, but this action does not in any wise preclude or restrict the Division from properly initiating and prosecuting revocation proceedings based on any failure of the plaintiff to appear for the reexamination scheduled pursuant to the regulation of October 13, 1961.

The petition is dismissed insofar as it attacks the Division's reexamination policies and regulation. The order of revocation is reversed with direction that any further revocation proceedings against the plaintiff shall conform with the principles expressed in this opinion.

*For modification*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*Opposed*—None.