72 N.J. Super. 588 (1962)
179 A.2d 21
SOL KANTOR, PLAINTIFF-APPELLANT,
v.
NED J. PARSEKIAN, ACTING DIRECTOR OF THE DIVISION OF MOTOR VEHICLES OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 15, 1962.
Decided March 9, 1962.
*590 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Sol Kantor argued the cause pro se.
Mr. Thomas F. Tansey, Deputy Attorney General, argued the cause for respondent (Mr. David D. Furman, Attorney General of New Jersey, attorney).
PER CURIAM.
This is an appeal by plaintiff from an order of the Acting Director of the Division of Motor Vehicles suspending his driver's license. The basis of the suspension was a determination that plaintiff failed to meet the visual acuity requirements set forth in regulations promulgated by the Division.
On January 15, 1960 plaintiff, while driving his automobile, was involved in an accident with another car, his first accident in 43 years of driving.
On April 28, 1960 the Division requested plaintiff to appear at its accident prevention clinic on May 21, 1960 at 8:30 A.M., informing him that there was in effect a policy of re-examining, among others, all drivers over the age of 60 years who had been involved in one reportable accident, regardless of responsibility. A physical examination form to be completed by a licensed physician of the State was enclosed with the notice. After a postponement plaintiff appeared at the testing center on June 7, 1960. A notice bearing the same date requested him to appear at the Perth Amboy driver qualification center to submit to further testing of his vision on June 23, 1960. He did not appear in response to this notice. Thereafter numerous letters were exchanged by the parties and the test was postponed on several occasions, plaintiff taking the position throughout that defendant was without legal right to require him to undergo visual acuity testing. Finally, on December 1, 1960 plaintiff submitted to vision tests which revealed that without glasses the vision of his right eye was 20/200 while the left eye was 20/LP (light perception only) without *591 glasses, and that his overall vision without glasses was 20/200. With glasses his vision in each eye was 20/100 and his overall vision 20/100.
The regulations of the Division governing the issuance of licenses provide for a minimum vision of 20/50 in one eye, with or without glasses.
On January 5, 1961 defendant by formal notice suspended the driving privilege of plaintiff, stating as a reason therefor, his "failure to pass visual acuity requirements of the New Jersey Driver's Examination." Subsequently, there were submitted in plaintiff's behalf the reports of two optometrists. Dr. Lester Mann stated that his examination disclosed that plaintiff had 20/200 vision with correction. Dr. Herman D. Lazaar under date June 22, 1961 reported a finding of 20/80 vision with correction. Obviously, the report of Dr. Mann confirmed the State's examination of December 1, 1960, and that of Dr. Lazaar revealed a defect in vision which exceeded the minimum requirements of the regulations.
Notwithstanding the results of the examination of December 1, 1960 and the existing order of suspension of January 5, 1961, an appointment was arranged for plaintiff to meet with representatives of the Division on February 23, 1961, in Trenton. On that day plaintiff was given two separate road tests by two representatives of the Division. As a result he was found to be unqualified to drive for various reasons, including his failure to give signals, his inability to read road signs, starting from the curb without checking traffic to the rear, and driving to the left of the center of the road. At this meeting the Division offered to have plaintiff's eyes examined by a physician designated by the State, and in the presence of plaintiff's physician. The offer was declined. Finally, on April 13, 1961, plaintiff having refused to surrender his driver's license, the Division was obliged to summon him to the Perth Amboy Municipal Court for violation of R.S. 39:5-35. He was found guilty and thereupon relinquished his license. This appeal followed.
Plaintiff contests the validity of the suspension of his *592 driver's license on the grounds that (1) defendant holds his office of Acting Director without legal warrant; (2) there is no legislative authority in the Director of Motor Vehicles to promulgate or enforce re-examinations of duly licensed motor vehicle operators; (3) such regulations if permissible would be "retroactive as to plaintiff" and unconstitutional; (4) legislation permitting re-examination of drivers over 60 years of age would be discriminatory and violative of due process requirements, and (5) no charges were brought against him, and he was accorded no hearing.
The first four points may be disposed of summarily. N.J.S.A. 39:2-2 provides in part that vacancies in the office of the Director of the Division of Motor Vehicles shall be filled by the Governor, by and with the advice and consent of the Senate. It is a matter of record that the nomination of the defendant as Director was made at a time when the office was vacant by reason of the resignation of the incumbent thereof, and submitted to the Senate for confirmation. Moreover, it is clear that under R.S. 39:2-5 defendant, who at the time of the director's resignation was a duly appointed Deputy Director, became Acting Director on the effective date of such resignation. Defendant was properly acting as "Acting Director" and it is of no material consequence that eventually he was not confirmed. Lastly, even if defendant did not occupy de jure status, he was a de facto officer. See Erwin v. City of Jersey City, 60 N.J.L. 141, 144 (E. & A. 1897).
The recent case of Bechler v. Parsekian, 36 N.J. 242, 251 (1961) disposes of the second, third and fourth of the enumerated points. There the court said:
"N.J.S.A. 39:5-30 authorizes the Director to suspend or revoke a license for violation of any provision of the Motor Vehicle Act, `or on any other reasonable grounds' which may be taken to include unfitness to drive. Cf. Tichenor v. Magee, supra.
It appears evident to us that if the Director is to discharge conscientiously his responsibilities under N.J.S.A. 39:3-10, 39:3-11 and 39:5-30, he must have and exercise adequate powers of re-examination as well as examination. Cf. R.S. 39:2-3; Lane v. *593 Holderman, 23 N.J. 304, 315 (1957); Cammarata v. Essex County Park Comm., 26 N.J. 404, 411 (1958). Practical necessities may preclude frequent periodic examinations, and may require special classifications based on age, accidents, violations or other suitable standards which may be embodied in announced policies and in formal regulations. So long as the classifications and the standards are reasonable and reasonably administered, they should readily withstand judicial attack. See New Jersey Restaurant Ass'n, Inc. v. Holderman, 24 N.J. 295, 300 (1957); Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199, 228 (1960)."
The single point of merit raised by plaintiff is that his license was revoked without his having been served with charges, and without a hearing thereon. Even this is debatable. The order of suspension itself explicitly states the charge that he had failed to pass visual acuity requirements of the New Jersey driver's examination. Ordinarily this would be regarded as a conclusion, rather than a charge, but in this case the Division thereafter accorded plaintiff several opportunities to meet this challenge, all of which, including the meeting of February 23, 1961, in combination, partook of essential elements of a hearing. Moreover, there is not the slightest evidence offered to us that if a formal hearing had been held, plaintiff would have been in a position to show compliance with the minimum requirement of 20/50 vision. Nevertheless, it cannot be denied that a formal hearing would entitle plaintiff to the right, among other things, to be represented by counsel and to cross-examine witnesses called by the State to testify under oath. In the Bechler case, supra, the court noted that:
"In the Wignall case, [Wignall v. Fletcher, 303 N.Y. 435, 103 N.E.2d 728, 730-731 (Ct. App. 1952)], Judge Froessel pointed to the modern trend, which we consider to be a wholesome one; it recognizes that in today's society a license to operate an automobile may be of vital significance and value to the licensee and `may not be taken away except by due process' [303 N.Y. 435, 103 N.E.2d 731] which requires that the licensee be fairly informed as to the charge against him and be afforded fair opportunity to be heard thereon. In Gellhorn and Byse, Administrative Law  Cases and Comments 759-779 (4th ed. 1960), the distinguished editors forcefully suggest (1) that not only the motor vehicle licensee but every licensee should have, prior to the complete withdrawal of the *594 authority conferred upon him, `an opportunity to show cause why his license should not be revoked' and (2) that where, in the administrative agency's judgment, the protection of the public requires the immediate cessation of activities under the license, the agency should have and exercise the power to order a `summary suspension of the license pending an opportunity to the licensee to be heard on the question whether his authority should be permanently revoked.'"
The court went on to say:
"In the light of all of the foregoing, we have concluded that here the Division failed to afford to the plaintiff legally sufficient notice and opportunity for hearing in the revocation proceeding which resulted in its revocation order, effective July 30, 1960. That order was not preceded by any hearing or by any notice fixing the time and place for a hearing at which the plaintiff could show cause why his license should not be revoked. Accordingly, it must be and is hereby set aside, but this action does not in any wise preclude or restrict the Division from properly initiating and prosecuting revocation proceedings based on any failure of the plaintiff to appear for the reexamination scheduled pursuant to the regulation of October 13, 1961." 36 N.J., at pp. 257-258.
There are, of course, factual differences between Bechler and the case before us. For one thing, in Bechler an order of revocation was attacked. Here an order of suspension is involved. However, since the suspension is not likely to be lifted unless plaintiff's sight should improve to the point that it meets minimum acuity standards, the practical effect of the suspension is a permanent revocation. We are, therefore, of the view that plaintiff should be given a hearing in the Division on an order to show cause why his license should not be revoked. The charge already set forth in the order of suspension of January 5, 1961 will be deemed to be a specification of the charges laid against him unless the State desires to file additional charges, in which event they should be reduced to writing and served upon plaintiff.
Accordingly, we direct that (1) within 30 days of the entry of the mandate herein, the Division of Motor Vehicles, on order to show cause why plaintiff's license should not be revoked, conduct a formal hearing, on notice to plaintiff of the time and place thereof; (2) if plaintiff intends to *595 offer additional medical evidence of his visual acuity at that time he promptly so advise the defendant, and submit to a medical examination at defendant's request.
Meanwhile the order of January 5, 1961 will remain in full force and effect.
Remand. No costs.