152 P.2d 886

**CAVE v. COOLEY.**

No. 4816.

Supreme Court of New Mexico.

Sept. 15, 1944.

Rehearing Denied Nov. 21, 1944.

G. A. Threlkeld, of Roswell, for appellant.

Robert W. Ward, Asst. Atty. Gen., for appellee.

BICKLEY, Justice.

Plaintiff (appellant) sued defendant (appellee) to recover damages on each of three causes of action. 1. False arrest. 2 and 3, damages for malicious prosecution.

The verdict of the jury was in favor of the defendant on each of the causes of

action and judgment in favor of defendant followed, whereupon plaintiff appealed.

While plaintiff was driving a truck on a public highway he was arrested by the defendant, a state policeman, near the scene of an accident which had occurred at the mouth of a lane leading off the main traveled portion of the highway at which point the defendant policeman was located. Defendant claimed that plaintiff was driving at an excessive and unlawful rate of speed and in a manner greatly dangerous to the safety of persons and property upon the highway. The defendant policeman claimed that he blew his whistle as a signal for plaintiff to stop but that plaintiff had passed the scene of the accident at such excessive speed, either not hearing or disregarding the officer's signal, and that the defendant policeman thereupon got into his car, pursued the plaintiff and arrested him.

The plaintiff stated that he was stopped 2.3 miles from the scene of the accident, denied that he was driving said truck at an excessive rate of speed or in a manner dangerous to human life or property, or that he refused to slow down or stop in response to any signal blown by defendant and denied that he heard any whistle blown. The verdict settled these fact issues in favor of defendant. The arrest was made without any warrant upon the claim of defendant policeman that the offense was being committed by the plaintiff in defendant's presence.

With reference to the first cause of action, the court in effect instructed the jury that they could award damages to the plaintiff if, and only if, they believed from a preponderance of the evidence that it did not reasonably appear to the defendant officer that the plaintiff was violating the traffic laws of the State of New Mexico, or that he did not act as an ordinarily reasonable and prudent man would act under the circumstances as they existed.

Of these instructions the appellant complains and presents the view that in order for an officer to be protected in making an arrest without a warrant of a person charged with a misdemeanor, such misdemeanor must actually be committed in the presence of the officer and that the officer must determine at his peril whether an offense has been committed or not. The appellee states on the other hand that an arrest for a misdemeanor may be made without a warrant where the officer has reasonable cause to believe that certain misdemeanors have been committed in his presence.

In Wisconsin Law Review, Vol. 1939 p. 385, is an article on "Arrest Without Warrant" in which the writer says:

"When an officer arrests a person whom he clearly has no common law or statutory right to arrest, there is no question as to his liability. Such would be the case, for example, if an officer deliberately arrested an innocent bystander who had committed no violation of law, or if an officer without process arrested an offender for a misdemeanor not committed in the officer's presence. But a closer question is whether

the officer is liable if he arrests one whom he honestly believes is committing an offense in his presence, but who actually is not violating the law. Some jurisdictions hold that the officer must actually know an offense is being committed and would hold him liable in such circumstances. The majority of jurisdictions, however, hold that it is not essential that the officer arresting without a warrant absolutely know that an offense is being committed in his presence, and rule that a bona fide belief on his part that it is being committed is enough."

■■ This appraisal as to the majority holding seems to be borne out by the citations to the text of similar import in 6 C.J.S., Arrest, § 6, p. 595. One of the cases cited in the C.J.S. text, supra, is Garske v. United States, 8 Cir., 1 F.2d 620, 622, where the court said:

"It is the well-established doctrine now throughout the United States that for a crime, which they have probable cause to believe is being committed in their presence, though it be a misdemeanor, duly authorized peace officers may make arrest without a warrant. The probable cause which will justify arrest for a misdemeanor without a warrant must be a judgment based on personal knowledge acquired at the time through the senses, or inferences properly to be drawn from the testimony of the senses. * * * The courts very generally hold that an offense is committed within the presence of an officer when his senses afford him knowledge that such is the fact. * * * There must be a prob-

able cause and a reasonable foundation for the judgment of the officer that a crime is being committed."

Since the publication of the C.J.S. text, the court of appeals of Ohio in Ryan v. Conover, 1938, 59 Ohio App. 361, 18 N.E.2d 277, 279 said:

"An officer may arrest a person when circumstances exist that would cause a reasonable person to believe that a crime has been committed in his presence. Section 13432-1, General Code; Bock v. City of Cincinnati, 43 Ohio App. 257, 183 N.E. 119; 6 Corpus Juris Secundum [Arrest, § 6, p.] 595; 3 Ohio Jurisprudence 140, Section 11. And this is true even though no offense has actually been committed. Consequently no civil liability attaches to him on account thereof in either circumstance."

All that Sec. 13432-1, General Code of Ohio, cited, says is:

"Officer may arrest on view. A sheriff, deputy sheriff, marshal, deputy marshal, watchman or police officer, herein designated as 'peace officers' shall arrest and detain a person found violating a law of this state, or an ordinance of a city or village, until a warrant can be obtained.

"A constable within the limits of the township in which said constable has been appointed or elected, shall arrest and detain a person found by him in the commission of a misdemeanor, either in violation of a law of this state or an ordinance of a village, until a warrant can be obtained."

So, it is seen the holding of the court is not based upon express language of the statute but upon a rule of reason that the officer may act upon a bona fide belief on his part that the offense is being committed. So it is with decisions of other courts adopting this view.

■ We think the West Virginia Supreme Court in State v. Fidelity and Casualty Co. of New York, 1938, 120 W. Va. 593, 199 S.E. 884, 887, correctly appraised the meaning of the phrase "committed in his presence." The court said:

"A crime is committed in the presence of an officer when the facts and circumstances occurring within his observation, in connection with what, under the circumstances, may be considered as common knowledge, give him probable cause to believe or reasonable grounds to suspect that such is the case."

And again:

"He (the officer) may be able to justify the arrest by showing that an offense was committed in his presence, or that he had reasonable grounds to believe that such was the fact."

In the Virginia Law Review of January, 1943 (Vol. 28) p. 315, is an interesting discussion of the uniform arrest act. The uniform arrest act, which is the outgrowth of experiences of many police chiefs, prosecutors and other experts consulted, provides, with respect to arrest without warrant:

"Section 6. Arrest without a Warrant.

"(1) An arrest by a peace officer without a warrant for a misdemeanor is lawful whenever:

"(A) He has reasonable ground to believe that the person to be arrested has committed a misdemeanor in his presence."

That this is desirable we do not doubt and we think it is but a restatement of the law as it has been interpreted by the majority of the courts dealing with the exact question.

■ Comp. 1941, Sec. 58-612, provides that certain enumerated peace officers shall have power to arrest any person violating any penal provision of the act relating to motor vehicles on highways, "on view or upon warrant issued by any justice of the peace or magistrate." "On view" means in the presence of the officer.

Sec. 68-905 seems to limit the operation of 58-612 by providing that the arresting officer shall, except as otherwise provided, issue a summons to the person apprehended, the acceptance whereof will procure his release from custody. This is mentioned as showing that the stigma and inconveniences of arrest for violations of the motor vehicle law are minimized through the detentions being merely temporary if the person detained agrees to respond to a summons. It is stated that the provisions relating to summons and release, etc., mentioned in sub-section (a) of the section shall not apply "to any person arrested and charged with an offense causing or con-

tributing to an accident resulting in injury or death to any person; nor to any person charged with reckless driving or driving in excess of thirty (30) miles per hour within a business or residence district, or in excess of fifty (50) miles per hour outside of a business or residence district; nor to any person charged with reckless driving or driving while under the influence of intoxicating liquor or narcotic drugs; nor to any person whom the arresting officer shall have good cause to believe has committed any felony."

We think it may not be amiss to refer to some general principles which the courts, as well as the legislators, have had in mind in dealing with the law of arrests.

Under the strict common law rule an officer had authority to arrest without a warrant for a misdemeanor, provided that the misdemeanor amounted to a breach of the peace and was in the presence of the officer. The officer might also arrest a person to prevent him from committing a misdemeanor which would have been a breach of the peace had the attempt been translated into action. These common law powers have been considerably broadened by statute. That is to say, the power to arrest for misdemeanors, not breaches or threatened breaches of the peace, has come into being.

Lest some may be apprehensive that the doctrine which we follow may encroach upon the liberty of the citizens, we call attention to the language of the court in State v. Reichman, 135 Tenn. 653, 188 S.W. 225, 229, Ann.Cas. 1918B, 889, where it was said:

"'Two great and vital principles of government are to be kept steadily in view, in pronouncing on conduct, such as is brought to view in this record; the liberty of a citizen, and the peace and repose of society. Civil liberty is natural liberty, shorn of the excesses which invade and trench on the equal liberty of others. No one can claim the right to violate the law, and precautionary force is justified, to prevent a greater impending evil. Such force, however, is in its nature remedial, and can be carried no farther than is reasonably necessary to prevent the threatened wrong. Prevention is less hurtful than redress, and when prudently exercised, is not only justified, but is commended of the law. No man can rightfully complain of any encroachment upon personal liberty, which he himself by his lawlessness or violence has rendered necessary for the safety and protection of others. It is liberty as defined by law, not unbridled license, our free Constitution guarantees to every man—the humblest, equally with the most exalted.' Hayes v. Mitchell, 69 Ala. [452], 454."

That our legislature has not broadened the common law except as to misdemeanors of the graver sort is manifest from an examination of our statutes which disclose examples. Our citations are to 1941 Comp. Sec. 41-2106 provides that those engaging in cheats, frauds or confidence games on railroad trains may be arrested without

warrant; by Sec. 41-404 persons killing, injuring, or attempting to poison animals or maliciously destroying or injuring personal property if "found in the act" may be arrested; by 41-1701 persons carrying deadly weapons in or about settlements, with certain exceptions, may be arrested without a warrant; 43-224 authorizes the arrest without warrant of one whom the arresting officer knows to be guilty of a violation of the game laws; 41-1806 authorizes arrest without warrant for violations of laws to prevent forest fires committed in the presence of officers; 58-612, heretofore noted, authorizes peace officers to arrest "on view or upon warrant" violators of laws regulating highways and highway traffic; 49-810 provides for arresting without warrant of persons violating the provisions of the laws relative to the handling of sheep and goats; by 41-438 an officer who shall discover any person "in the act" of transporting cattle, horses, sheep or goats in violation of the law may arrest such violators; by 49-943 a peace officer is authorized to stop any motor or other vehicle transporting livestock or carcasses thereof, and demand from the person operating such vehicle to show the certificate provided for and issued under the terms of the act, and should any person transporting said livestock or carcasses thereof be unable to exhibit such certificate the officer is authorized and empowered to arrest "without warrant" any person or persons operating said motor or other vehicle, etc.

It will thus be seen that the legislature has not broadened the power to arrest without warrant even in the presence of an officer for misdemeanors which are mere peccadillos. Some law writers have argued that there is no longer any very good reason why officers should be permitted to arrest for felonies upon reasonable information that felonies have been committed, even though not in their presence, and not for misdemeanors; and it has been urged that history is the only reason for making the distinction between the arrest for felonies and misdemeanors. It has been argued that the laws of arrest by peace officers illustrates the discrepancies between the law in the books and the law in action. The former frequently not only antedates the modern police department but was developed largely during a period when most arrests were made by private citizens, when bail for felonies was usually unattainable and when years might pass before the royal judges arrived for a jail delivery. Further, conditions in the English jails were then such that a prisoner had an excellent chance of dying of disease before trial. Today, with few exceptions, arrests are made by police officers, not civilians. Typically they are made without a warrant by officers in patrol cars, often in response to requests coming over the police radio, sometimes from distant cities. When a citizen is arrested his probable fate is neither bail nor jail, but release after a short detention in a police station. A result of the somewhat antiquated law on the books gave rise to a difficult and incongruous

situation in which the peace officers found themselves, without their fault. They could not fulfill both their duty to obey the law in restraint of arrests and their duty to protect the community. It was thought that although in many instances the technical violations of the law frequently made by the police officers in effecting arrests, questioning suspects, and releasing persons not held for trial were trivial and more often than not of benefit to the suspect, the fact that the law of arrests was being violated had an undesirable effect on both the police and the public. It was thought to be debasing for any man to take an oath to obey the law and then be placed in a situation requiring a violation of that oath. Such considerations led the Interstate Commission on Crime to decide that a study of the law of arrest should be made in order to determine the possibility of drafting a model act to reconcile the law as written with the law in action. Virginia Law Review, supra. Some of the results of this committee's work have heretofore been noted. We do not doubt that the same considerations may have also influenced judicial decisions and, as heretofore indicated, not improperly so—at least to the extent here approved.

The foregoing disposes of the basic part of the case. We have carefully examined appellant's further contentions relating to the first cause of action, and also relating to the second cause of action and we find them without merit.

Finding no error, the judgment is affirmed, and it is so ordered.

SADLER, C.J., and MABRY, BRICE, and THREET, JJ., concur.