Maurlce COLLING, Petitioner and
Respondent,

v.

Walter R. HJELLE, as State Highway Com-
missioner of the State of North Dakota and
W. W. Ferguson, as Director of the Safety
Responsibility Division for State Highway
Commissioner, Respondents and Appellants.

No. 8088.

Supreme Court of North Dakota.

Dec. 19, 1963.

Rehearing Denied Jan. 10, 1964.

Rausch & Chapman, Bismarck, for petitioner and respondent.

Helgi Johanneson, Atty. Gen., and Jon R. Kerian, Sp. Asst. Atty. Gen., Bismarck, for respondents and appellants.

MORRIS, Chief Justice.

This is an appeal by the State Highway Commissioner and the director of the Safety Responsibility Division from an order of the District Court of Burleigh County reversing an order of the State Highway Commissioner which revoked motor vehicle operator's license number 22231, issued to Maurice Colling. The order of the district court also restored the license to Colling. In revoking the license, the State Highway Commissioner purported to act pursuant to Chapter 39-20, NDCC, as amended by Chapter 269, Session Laws N.D.1961. Upon the revocation of his driver's license, Colling requested and was granted a hearing before the Commissioner pursuant to Section 39-20-05, NDCC. Colling then petitioned the district court for a review of the adverse determination of the State Highway Commission pursuant to Section 39-20-06, NDCC. Under that section the district court is required to determine the matter upon the record made before the Commissioner, and no additional evidence may be heard.

At the hearing in the district court the only evidence presented was a transcript of the testimony of patrolman Templeton of the Bismarck Police Department. We summarize his testimony. On December 22, 1962, at about two o'clock a. m., the patrolman observed Colling driving west on Highway 10 in Bismarck, and approaching the Memorial Bridge which spans the Missouri River between Bismarck in Burleigh County and the adjacent county of Morton. The speed limit at the point of observation was 25 miles per hour and Colling was driving about double that limit. The patrolman followed Colling across the bridge into the adjacent county of Morton, where he was apprehended by the officer. The patrolman asked Colling to get out of his car and walk back to the patrolman's car. He was weaving and staggering, and there was a strong

smell of alcohol about him. On demand he showed the patrolman his driver's license. They sat in the patrolman's car and the patrolman told Colling that he was under arrest for driving a vehicle while under the influence of alcoholic liquor. The patrolman drove Colling to the Bismarck police station, and there he asked him to take a "drunkometer" test, which Colling refused to do. Thereafter the patrolman filled out an affidavit to the effect that Colling had been arrested and had refused to submit to the test, which affidavit he mailed to the Safety Responsibility Division of the Highway Department. The patrolman also testified that at a subsequent hearing on the matter "Mr. Colling was found not guilty." He also testified that as Colling drove across the bridge his car was weaving and almost hit the right side of the bridge twice as he went across. The patrolman had no warrant of arrest. The controlling issue in this case is whether Colling at the time he was asked to take the "drunkometer" test was under arrest as that term is used in Chapter 39-20, NDCC, as amended. Section 1 of that Chapter (39-20-01, NDCC) provides:

> "Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent subject to the provisions of this chapter to a chemical test, or tests, of his blood, breath, saliva, or urine for the purpose of determining the alcoholic content of his blood. The test or tests shall be administered at the direction of a law enforcement officer only after placing such person except persons mentioned in section 39-20-03 under arrest and informing him that he is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor. The arresting officer shall determine which of the aforesaid tests shall be used."

The trial court expressed the view that the arrest, being made without a warrant,

could only legally be made for an offense committed in the presence of the officer and that the acquittal establishes that no offense was committed in the presence of the arresting officer and therefore no legal arrest could be made without a warrant. On the other hand, the Commissioner contends that regardless of the acquittal, the arrest was legal because the facts are such that the patrolman had reasonable grounds to believe that Colling was driving his motor vehicle while under the influence of intoxicating liquor, and that in any event the acquittal is not conclusive in this proceeding and is not binding on the Commissioner.

■ The authority of an officer to make an arrest without a warrant is derived from statutes and varies in different states because of different statutory provisions. Our statute is Section 29-06-15, NDCC, and provides:

> "29-06-15. Arrest without warrant.— A peace officer, without a warrant, may arrest a person:
>
> "1. For a public offense, committed or attempted in his presence;
>
> "2. When the person arrested has committed a felony, although not in his presence;
>
> "3. When a felony in fact has been committed, and he has reasonable cause to believe the person arrested to have committed it;
>
> "4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested; or
>
> "5. For such public offenses, not classified as felonies and not committed in his presence as provided for under section 29-06-15.1."

Paragraph 5 of the above-quoted section refers to Section 29-06-15.1, NDCC, which in turn provides that:

> "A police officer at the scene of a traffic accident may arrest without a warrant

any driver of a vehicle who is a non-resident of this state and who is involved in the accident when based upon personal investigation, the officer has reasonable and probable grounds to believe that the person has committed any offense under the provisions of title 39 of this code in connection with the accident, and if the officer has reasonable and probable grounds to believe the person will disregard a written promise to appear in court."

Section 29-06-16, NDCC, authorizes a peace officer at night to arrest a person for a public offense without a warrant if the offense was committed or attempted in his presence, or

"He has reasonable cause to believe that the person arrested has committed a felony, though it afterwards appears that the felony was not committed."

This is the only statutory provision that we have been able to find that authorizes and therefore legalizes an arrest though it afterwards appears that the crime for which the arrest was made was not committed, and that authorization is specifically restricted to felonies.

 It has been suggested that the legislature in the enactment of Chapter 39-20, NDCC (known as the Implied Consent Law), intended to vest law enforcement officers with broader powers of arrest than those applicable to other misdemeanors. However, the examination of legislative journals and a comparison of the bill originally introduced with the law as finally enacted establishes the contrary.

 Section 1, of Chapter 39-20, ND CC, was introduced in the 1959 session of the legislature as Senate Bill No. 142. The first section of the original bill read as follows:

"Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent subject to the provisions of this act to a chemical test, or tests, of his blood, breath, saliva, or urine for the purpose of determining the alcoholic content of his blood. The test, or tests, shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person has been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor."

The original bill was amended during passage in several material respects. Particularly revealing as to legislative intent was an amendment proposed by the senate judiciary committee to

"Delete the words 'having reasonable grounds to believe the person has been driving or was in actual physical control of' and insert the following words in lieu thereof: 'only after placing such person under arrest and informing him that he is or will be charged with the offense of driving.'"

Journal of the Senate of the 36th Legislative Assembly of the State of North Dakota, page 456. By adopting this amendment the legislature required that an arrest be made before the officer was empowered to direct the administration of a chemical test. It rejected and struck out the provision that the test could be directed by an officer "having reasonable grounds to believe" the person had been driving a motor vehicle upon the highway while under the influence of intoxicating liquor. We also believe that the legislature had in mind that if the arrest was made without a warrant it must be for the commission of the offense in the presence of the arresting officer and that such commission of the offense was a basic prerequisite to the right to require the person whom the officer had apprehended to take the chemical test prescribed by the statute and upon refusal to do so to suffer the penalty of being deprived of his license to drive a motor vehicle upon the public highway. The arrest without a warrant to be

effective must be a lawful arrest as prescribed by statute and not one made because the officer had reasonable grounds to believe that the person apprehended had committed the offense of driving while intoxicated.

■ The importance of the lawfulness of the arrest is emphasized by the fact that the arrest not only affects the revocation of the operator's license, but extends to the admissibility of the refusal to submit to the test or tests as evidence in other cases under Section 39–20–03, which provides:

"If the person under arrest refuses to submit to the test or tests, proof of refusal shall be admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, provided the person shall first have testified in the action."

Section 39–20–11 makes the provisions of the chapter applicable to prosecutions for violations of municipal ordinances prohibiting the driving or control of a motor vehicle while under the influence of intoxicating liquor. The latter section was not in the original bill as introduced. It was added by amendment during passage.

In 5 Am.Jur.2d, Arrest, Section 32, it is said:

"According to one view, an officer who arrests without warrant on a misdemeanor charge acts at his peril, since the arrest will be unlawful if the offense was actually not committed, even though the officer acts on reasonable grounds and in good faith. Under this view, it has been held that acquittal of the misdemeanor conclusively shows the arrest to have been unlawful, although there is also authority to the contrary."

We find in Wharton's Criminal Law and Procedure (Anderson), Section 1597,

"* * *. when no offense has been perpetrated, circumstances warranting a reasonable belief that it was committed will not justify the officer in making the arrest without a warrant."

In support of this statement the author cites State v. Mobley, 240 N.C. 476, 83 S.E.2d 100.

In Restatement of the Law, Torts, Section 119, under Illustration o, it is said:

"To create the privilege to arrest another, it is not enough that the actor —whether a private person or a peace officer—reasonably suspects that the other is committing a breach of the peace, except as stated in Clause (a), and in Section 121(c) where the actor is a peace officer and he arrests a participant in an affray. If in fact no breach of the peace has been committed, a mistaken belief on the part of the actor, whether induced by mistake of law or of fact and however reasonable, that a breach of the peace has been committed by the other, does not confer a privilege to arrest under Clause (c)."

The law with respect to the legality of arrests is sometimes confused with the law pertaining to malicious prosecution where a different rule applies. The different rules are well illustrated in Muniz v. Mehlman, 327 Mass. 353, 99 N.E.2d 37, which involved a count for false arrest or imprisonment and a count for malicious prosecution.

The distinction between the rules applicable to the two counts is pointed out in a note at the bottom of page 359, 327 Massachusetts, page 41, 99 N.E.2d, which says:

"It is important to keep this distinction in mind. For example, in the present case there was evidence in the court below tending to prove that the plaintiff did not in fact commit the offenses for which complaints were brought, and there was also evidence that he did. But the question was not

whether he was in fact guilty but whether the defendant had probable cause to believe that he was. In the count for false imprisonment the issue was just the reverse. There, since the arrests were for misdemeanors, the issue was not that of probable cause but whether the plaintiff had in fact committed the offenses for which he was arrested."

In 5 Am.Jur.2d, Arrests, Section 41, Muniz v. Mehlman, supra, is cited in support of the following statement:

"In some jurisdictions, probable cause will justify an officer in stopping a vehicle to investigate the driver's condition; but if he goes further and makes the arrest, probable cause is no longer enough, and he must show that the offense for which the arrest was made was actually committed."

In Commonwealth v. Robey, Ky., 337 S.W.2d 34, it is said:

"In such cases as Parrott v. Commonwealth, Ky., 287 S.W.2d 440, Commonwealth v. Vaughn, Ky., 296 S.W.2d 220, and Thomason v. Commonwealth, Ky., 322 S.W.2d 104, we have held that where a *search* has been made incident to an arrest the evidence obtained by the search is not admissible in a prosecution. for an offense disclosed by the search, if a charge was made of the offense for which the arrest was made and the defendant has been acquitted on that charge or the charge is still pending. The reason is that a *search* without a warrant can be made only incident to a *lawful* arrest, and if there has been an acquittal of the charge of the offense for which the arrest was made, or the charge is pending for trial, the legality of the arrest cannot be established."

However, in United States v. Sykes, 6 Cir., 305 F.2d 172, the Federal court, while conceding the rule in Kentucky with respect to the inadmissibility of the evidence after acquittal which establishes the invalidity of the arrest, holds that in the absence of an acquittal the question of validity of the arrest is one for the Federal courts to decide upon the basis of the evidence therein produced.

In Edgin v. Talley, 169 Ark. 662, 276 S. W. 591, 42 A.L.R. 1194, it is said:

"* * * a misdemeanor must have been actually committed to justify an arrest without a warrant, and the officer must determine at his peril whether an offense has been committed or not."

The seeming divergence of authority indicated by the above quotation from American Jurisprudence is mainly found among the cases dealing with the liability for damages growing out of actions for false arrest and false imprisonment, but here the question is not one of damages but one of determining the intention of the legislature as indicated by the amendments to the original bill during the course of enactment. The duty of the legislature was at least twofold: to provide reasonable protection and safety for persons legitimately using the public highways from hazardous driving by others, and to safeguard the rights of persons to whom the state had granted the personal and valuable right of operating vehicles from unwarranted forfeitures of their licenses. Recent cases have emphasized the importance of protecting the latter right. In State v. Moseng, 254 Minn. 263, 95 N.W.2d 6, it is said:

"Much has been said as to whether a license to operate a motor vehicle is a right or a privilege. It has been variously denominated as a privilege in the nature of a right and as an important privilege or right under our present mode of living. No one will deny that we have reached a time in our modern way of life when the motor vehicle has clearly become a necessity to many people. The very liveli-

hood of many, such as chauffeurs, truckers, traveling salesmen, men who work in skilled or unskilled labor, depends upon the operation of a motor vehicle. Their drivers' licenses are just as valuable as a license to engage in an occupation or profession. Clearly one's inalienable right to liberty and the pursuit of happiness is curtailed if he may be unreasonably kept off the highways maintained by him as a citizen and taxpayer. It was recently said in Wall v. King, 1 Cir., 206 F.2d 878, 882, that 'the freedom to make use of one's own property, here a motor vehicle, as a means of getting about from place to place, whether in pursuit of business or pleasure, is a "liberty" which under the Fourteenth Amendment cannot be denied or curtailed by a state without due process of law.' In any event, the right of a citizen to drive a motor vehicle upon the highways is to be safeguarded against the whim or caprice of police or administrative officers. It is therefore clear that, whether a driver's license be termed a 'privilege' or a 'right,' such license, whether restricted or not, once granted, is of substantial value to the holder thereof and it may not be suspended or revoked arbitrarily or capriciously but only in the manner and on the grounds provided by law."

To the same effect see Bechler v. Parsekian, 36 N.J. 242, 176 A.2d 470; Wignall v. Fletcher, 303 N.Y. 435, 103 N.E.2d 728.

■ The importance of the guilt of a person apprehended and upon whom a demand was made to take the test or tests for intoxication prescribed by Chapter 39–20, NDCC, must have been apparent to the legislature from the very terms of the law that was being enacted, for it was amended to provide that a test could be administered only after placing the person under arrest. No law authorized an officer to make the arrest upon suspicion or reasonable or probable cause. The arrest could be made without a warrant only for an offense committed in the presence of the officer. The refusal to take the test if he was lawfully arrested for an offense committed in the presence of the officer subjected the licensee to mandatory revocation of his operator's license for six months. The law, further, made proof of refusal admissible in any civil or criminal action or proceeding arising out of the acts which he was alleged to have committed while driving or in actual physical control of a vehicle upon the highways while under the influence of intoxicating liquor provided that he had testified in the action. His refusal was also made admissible in any prosecution for the violation of a municipal ordinance prohibiting the driving or control of a motor vehicle while under the influence of intoxicating liquor. In this case, at the time the hearing was held Maurice Colling had been acquitted of the charge for which he was placed under arrest. The officer had no warrant. The crime charged was one for which a lawful arrest could be made only if committed in the presence of the officer. The acquittal established that the crime charged had not been committed either in the presence of the officer or otherwise. That determination was made by a court. It could neither be reversed nor ignored in a hearing before an administrative official who conducted the hearing, presented the evidence, questioned the witness, and made the quasi-judicial determination that resulted in the order revoking the operator's license. We agree with the trial court that the order of revocation issued by the State Highway Commissioner was properly reversed. The order of the district court is affirmed.

STRUTZ, TEIGEN and BURKE, JJ., concur.

ERICKSTAD, Judge (dissenting).

In an attempt to reduce the holocaust on our highways, part of which is due to

the driver who has imbibed too freely of intoxicating liquor, the so-called "Implied Consent Act" was enacted by our legislature in 1959.

The first section of said act is now contained in Section 39–20–01 of the North Dakota Century Code, which reads as follows:

"39–20–01. Implied consent to determine alcoholic content of blood.—Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent subject to the provisions of this chapter to a chemical test, or tests, of his blood, breath, saliva, or urine for the purpose of determining the alcoholic content of his blood. The test or tests shall be administered at the direction of a law enforcement officer only after placing such person except persons mentioned in section 39–20–03 under arrest and informing him that he is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor. The arresting officer shall determine which of the aforesaid tests shall be used."

Under this section, all who operate a motor vehicle upon the highways of our state are deemed to have given consent to a chemical test of their blood, breath, saliva or urine for the purpose of determining the alcoholic content of their blood. Consent is deemed given "subject to the provisions of this chapter." The reference to "chapter" is to Chapter 39–20 of the North Dakota Century Code.

At the time of petitioner Colling's arrest, said chapter contained twelve sections. The reference to "the provisions of this chapter," therefore, included the provisions of other sections of the chapter as well as the provisions of Section 39–20–01 of the North Dakota Century Code.

When the legislature amended the afore described section prior to its adoption upon recommendation of the Senate Judiciary Committee to require that the test be administered only after placing the person under arrest and informing him that he is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, the legislature intended to protect the driver of a vehicle from the irritation and inconvenience of submitting to chemical tests which might be required at the mere whim of a law enforcement officer.

By requiring the officer to place the person under arrest and by requiring him to inform the arrested person of the specific offense with which he was or would be charged, the officer was required to exercise such judgment as would protect him from liability in the event that he were for this arrest subsequently sued for false arrest.

This amendment merely clarified the fact that an arrest must be made. It did not change the basis for the arrest and the right to request the person to take the test. This is indicated by Section 39–20–04 of the North Dakota Century Code, the pertinent part of which reads as follows:

"* * * If a person under arrest refuses to submit to chemical testing, none shall be given, but the state highway commissioner, upon the receipt of a sworn report of the law enforcement officer that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor, and that the person had refused to submit to the test or tests, shall revoke his license or permit to drive and any nonresident operating privilege for a period of six months; * * *."

This section definitely ties the arrest in with "reasonable grounds to believe." It

obviously means that the highway commissioner is required to revoke the driver's license or permit of a person if he receives a sworn report of a law enforcement officer that the officer had reasonable grounds to believe that the person had been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor and that, upon this basis, he arrested the person, asked him to take the test, and received a refusal.

It is interesting to note that the words "arrested person" were a part of the bill as it was originally introduced and that no change was made in the language of this section after the amendment was made to Section 1 of Senate Bill No. 142, which is Section 39-20-01 of the North Dakota Century Code.

It should be further noted that no inference can be drawn from this section, which establishes the basis for a revocation of the driver's license or permit, that the revocation or decision to revoke shall be held in abeyance until the person has been either convicted or acquitted of the criminal offense charged.

The scope of the administrative hearing available to the person whose license has been revoked for failing to take a test required by the act is set forth in Section 39-20-05 of the North Dakota Century Code. The part material to this opinion reads as follows:

"* * * The hearing shall be transcribed and its scope shall cover the issues of whether a law enforcement officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor; whether the person was placed under arrest; and, whether he refused to submit to the test or tests. * * *"

In providing for the scope of the hearing, the legislature did not require the reviewing officer to conduct a trial of the person for the criminal offense charged, but it did require the reviewing authority to determine whether the law enforcement officer "had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor."

The record of the hearing clearly shows that the law enforcement officer had reasonable grounds to believe that Colling, in the presence of the officer, had been driving a vehicle upon the public highways while under the influence of intoxicating liquor.

Concededly, the hearing officer was also to decide whether the driver had or had not been arrested. The finding that the driver, Colling, had been arrested is amply supported by the record. The arrest, which was without a warrant—and in almost all of these cases, arrests must, of necessity, be without warrants—was made by a law enforcement officer who had reasonable grounds to believe that the person arrested had, in his presence, committed the crime charged.

The third and last matter to be considered at the hearing was whether the driver had been asked to submit to the test or tests and had refused to submit thereto. That Colling was asked to take the test and refused is not denied.

Further proof that the legislature intended that the arrest required be upon "reasonable grounds to believe" is the fact that the original section of the original bill providing for the scope of the hearing required that the hearing cover the same three issues in the same order as they are contained today in Section 39-20-05 of the North Dakota Century Code.

The State of New York was one of the first states to pass an implied consent law. Its first act, Chapter 854 of the Laws of

New York for 1953,* did not contain a requirement that the person be first placed under arrest, that the report of the officer to the Commission be sworn, and that the person have a hearing prior to the revocation of his driver's license. These shortcomings were pointed out in the case of Schutt v. MacDuff, Supreme Court, Special Term, Orange County, Jan. 2, 1954, 205 Misc. 43, 127 N.Y.S.2d 116.

Possibly as a result of this case, the legislature of the State of New York amended the law to read as follows:

"§ 71–a. Chemical tests. 1. Any person who operates a motor vehicle or motor cycle in this state shall be deemed to have given his consent to a chemical test of his breath, blood, urine, or saliva for the purpose of determining the alcoholic content of his blood provided that such test is administered at the direction of a police officer having reasonable grounds to believe such person to have been driving in an intoxicated condition and in accordance with the rules and regulations established by the police force of which he is a member. If such person having been placed under arrest and having thereafter been requested to submit to such chemical test refuses to submit to such chemical test the test shall not be given but the commissioner shall revoke his license or permit to drive and any nonresident operating privilege; provided, however, the commissioner shall grant such person an opportunity to be heard but a license, permit or nonresident operating privilege may, upon the basis of a sworn report of the police officer that he had reasonable grounds to believe such arrested person to have been driving in an intoxicated condition and that said person had refused to submit to such test, be temporarily suspended without notice pending the determination upon any

such hearing. The provisions of subdivisions five and six of section seventy-one of this law shall be applicable to revocations under this section. * * *" Laws of New York, 1954, Chapter 320.

Following the enactment of the amended version of the law, the case of Combes v. Kelly, Supreme Court, Equity Term, Niagara County, was decided in 1956, 2 Misc. 2d 491, 152 N.Y.S.2d 934. That case involved an arrest without a warrant. We quote from said opinion a part thereof, to indicate how the court considered the argument that an acquittal made the original arrest illegal.

"The petitioner claims that the decision in the Anderson case [Anderson v. Macduff, 208 Misc. 271, 143 N.Y.S. 2d 257, 259] is not applicable because his arrest was unlawful, while in the Anderson case it was lawful.

"The opinion in the Anderson case does not state if the offense (a misdemeanor) was, or was not, committed in the presence of the arresting officer. It merely relates that 'on September 2, 1954, the petitioner was arrested * * and charged with driving an automobile while intoxicated'. It then states that 'the arresting officer requested the petitioner to submit to a blood test but this was refused by the petitioner who stated that he preferred to go before the judge'.

"* * * Based upon the contention that his arrest was unlawful, the petitioner argues that the request to submit to the chemical test was invalid.

"The alleged offense is a misdemeanor, Section 70, Subdivision 5, Vehicle and Traffic Law.

"Generally, an arrest for a misdemeanor, must be made upon a warrant, unless committed in the presence of the

* Now Vehicle and Traffic Law, McKinney's Consol.Laws, c. 71, § 1194.

arresting officer, Section 177, Code of Criminal Procedure.

"An exception to the general rule, however, is made in relation to an arrest for an alleged violation of Section 70, Subdivision 5 of the Vehicle and Traffic Law. It is provided in Subdivision 5–c of the same section that an arrest for an alleged violation of said Subdivision 5, Subdivision 5–a ('leaving scene of accident without reporting') and Subdivision 5–b ('leaving scene of injury to certain animals without reporting') may be made by a peace officer without a warrant, 'in case of either of the following violations, which in fact have been committed, though not in his presence, when he has reasonable cause to believe that the violation was committed by such person: (1) violation of subdivision five of this section if coupled with accident or collision in which such person is involved; (2) violation of subdivisions five–a or five–b of this section'.

"The petitioner claims that his acquittal established that the alleged violation had not in fact been committed. Therefore, he concludes that the arrest, without a warrant, was unlawful, because that could only be made without a warrant under Section 70, Subdivision 5–c, Vehicle and Traffic Law, when 'the violation in fact (had) been committed'.

"In effect, he is contending that the validity of the arrest depends on the outcome of the subsequent trial. In other words, if there is a conviction, the arrest was lawful, but if there is an acquittal, the arrest was unlawful.

"That argument, while ingenious, is, nevertheless, strained and tortuous.

"The said subdivision must be given a reasonable interpretation.

"It is my interpretation, that under said subdivision, if the offense had not been committed in the presence of the arresting officer, he could, nevertheless, make the arrest if he had 'reasonable cause to believe that the violation' had been committed by the person arrested and that such violation was 'coupled with accident or collision in which such person was involved'." Combes v. Kelly, supra.

Although the Court of Appeals of New York has apparently not ruled on this question specifically, the Appellate Division of the Supreme Court of New York has rendered a decision from which it could be inferred that it would support the decision of Combes v. Kelly, supra.

"* * * The testimony of police officers at the hearing before respondent's referee was that on the basis of their observations of petitioner's voice, speech, eyes, breath and gait he was in their opinion intoxicated. This meets the preliminary statutory requirement for the request by the arresting officer that a test for alcohol be taken by the driver, i. e., 'reasonable grounds to believe' that the person was 'driving' in an intoxicated condition." Clancy v. Kelly, 7 A.D.2d 820, 180 N.Y.S.2d 923.

Although the court does not indicate in what manner the arrest was made, the Supreme Court of Nebraska, in passing upon its implied consent law, which contained a requirement that a person be placed under arrest before being asked to submit to a chemical test to determine the amount of alcoholic content in his body fluid, found, "[t]he fact of acquittal of a criminal charge of operating a motor vehicle while under the influence of alcoholic liquor does not have any bearing upon a proceeding before the director for the revocation of a driver's license under the provisions of law separate and distinct from criminal statutes." Prucha v. Department of Motor Vehicles, 172 Neb. 415, 110 N.W.2d 75, at 81, 88 A.L.R.2d 1055.

The majority opinion in the instant case, in rejecting the idea that the legislature intended in the implied consent law that an arrest could be made without a warrant where the law enforcement officer had reasonable grounds to believe that the offense had been committed in his presence, relies heavily on Section 29–06–15 of the North Dakota Century Code.

This appears to be the first occasion for this court to interpret Subsection 1 of said section, which reads as follows:

"29–06–15. Arrest without warrant. —A peace officer, without a warrant, may arrest a person:

"1. For a public offense, committed or attempted in his presence;" North Dakota Century Code.

Other states with similar provisions have considered this matter with varying results. The opinion of the majority of our court in the instant case is supported by the appellate courts of a number of states. The Federal courts and perhaps a greater number of the state courts hold to the contrary.

In a Minnesota case decided in 1958, wherein a peace officer sought to recover damages as the result of an assault and battery alleged to have been committed upon him when he attempted to arrest a person without a warrant, that court said:

"Surely no case better illustrates, than does this one, the instances in which probable cause to believe that certain acts constitute a misdemeanor should justify an arrest without a warrant, provided those acts are committed in the officer's presence. The statutory prohibition against careless driving is contained in § 169.13, subd. 3, which provides:

" 'No person shall operate or halt any vehicle upon any street or highway carelessly or heedlessly in disregard of the rights or the safety of others, or in a manner so as to endanger, or be likely to endanger, any person or property.'

"Whatever standards this language conveys, in every case it must always be the judgment of the peace officer in the first instance which determines whether or not a violation has occurred. Carelessness is synonymous with ordinary negligence, and thus, in every instance where it is alleged, a fact question is raised upon which an officer's decision is always subject to the final decision of the trier of fact. Nothing more is required than that the acts be observed and that the officer infer from them that they are sufficient to constitute a misdemeanor. The rule applies even where the alleged violator is subsequently acquitted in a traffic court, for that is of no consequence in so far as the validity of the arrest itself is concerned.

"Therefore, since the acts were all committed in plaintiff's presence and because from them he had reasonable cause to believe that they constituted a misdemeanor, we conclude that he had the right either to arrest defendant in St. Croix Beach or to pursue him beyond its boundaries for that purpose and to use whatever force was necessary in so doing." Smith v. Hubbard, 253 Minn. 215, 91 N.W.2d 756, at 763.

The Minnesota court was apparently interpreting Section 629.34, Subsection (1), of the Minnesota Statutes, which is very similar to Subsection 1 of Section 29–06–15 of the North Dakota Century Code.

"629.34 Without warrant, when; break door, when

"A peace officer may, without warrant, arrest a person:

"(1) For a public offense committed or attempted in his presence;" Minnesota Statutes Annotated.

A Federal court case which is cited by state courts to support the holding that a person may be arrested without a warrant for the commission of a misdemeanor when the law enforcement officer has reasonable grounds or probable cause to believe that the offense was committed in his presence is the case of Garske v. United States, 8 Cir., 1 F.2d 620. At pages 622 and 623 of said opinion, the Circuit Court of Appeals, Eighth Circuit, had this to say:

"It is the well-established doctrine now throughout the United States that for a crime, which they have probable cause to believe is being committed in their presence, though it be a misdemeanor, duly authorized peace officers may make arrest without a warrant. The probable cause which will justify arrest for a misdemeanor without a warrant must be a judgment based on personal knowledge acquired at the time through the senses, or inferences properly to be drawn from the testimony of the senses. Mere suspicion is not enough to justify arrest without a warrant for a misdemeanor and a search by force of the person so arrested.

"The courts very generally hold that an offense is committed within the presence of an officer when his senses afford him knowledge that such is the fact. O'Connor v. United States (D.C.) 281 Fed. 396; United States v. Borkowski (D.C.) 268 Fed. 408; Elrod v. Moss (C.C.A.) 278 Fed. 123; Lambert v. United States (C.C.A.) 282 Fed. 413."

The said court cites many other cases supporting this rule.

The aforesaid opinion, Garske v. United States, rendered in 1924, is referred to in a footnote to a case decided in 1961 by the United States Court of Appeals, Third Circuit. In the 1961 case entitled United States v. Murphy, 290 F.2d 573, at page 575, the court said:

"The Court made it clear in Carroll v. United States, 1925, 267 U.S. 132, 156–157, 45 S.Ct. 280, 69 L.Ed. 543, that an officer can make an arrest without first securing a warrant where he has probable cause to believe that a misdemeanor is being committed in his presence. Probable cause does not require, as the Supreme Court has so frequently said, that the arresting officers have evidence to establish criminal guilt. Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879. On the other hand, a mere inkling or suspicion is not enough. United States v. Walker, 7 Cir., 1957, 246 F.2d 519. 'Probable cause,' Justice Douglas said in Henry v. United States, 1959, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134, 'exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed.' * * * *"

The case of State v. Twitchell, Wash., 378 P.2d 444, rendered in 1963, is interesting from another point of view. In that case, the sheriff was prosecuted for willful neglect of duty in permitting prostitution to be carried on in his jurisdiction without making complaints or arrests. At page 448 of said case, the Washington court said:

"The next contention of the appellant is that the court erred in instructing the jury on the law of arrest for a misdemeanor without a warrant. The court instructed the jury:

" 'The crimes of practicing prostitution and the keeping of a house of prostitution are Gross Misdemeanors under the laws of this State.

" 'A police officer is entitled to make an arrest for a Gross Misdemeanor without a warrant although the one ar-

rested is not actually violating the law at the time of the arrest if in fact the person's conduct is such as to lead a reasonably prudent officer to believe in good faith that the person is violating the law in the officer's presence.'

"Again, the appellant concedes the law to be that an officer may arrest for a misdemeanor under circumstances which would lead a reasonably prudent officer to believe in good faith that there was a violation, and cites the case of Coles v. McNamara, 131 Wash. 377, 230 P. 430, 136 Wash. 624, 241 P. 1, as the leading authority in this jurisdiction. Another and more recent case so holding is Sennett v. Zimmerman, 50 Wash.2d 649, 314 P.2d 414. The instruction was appropriate in this case because the jury had before it the question whether the appellant was diligent in making arrests, and this question could not be properly decided if the jury was not informed concerning the circumstances under which an officer could make an arrest without risking civil liability. As the appellant points out in his brief, the instruction given correctly states the law."

As the aforesaid case involves what the State of Washington terms a gross misdemeanor, it may not be strictly in point. The court did, however, cite as authority the case of Sennett v. Zimmerman, 50 Wash.2d 649, 314 P.2d 414, which involved a mere "misdemeanor" in which the same rule was applied.

The Washington court, in Sennett v. Zimmerman, supra, after citing the case of Garske v. United States, supra, said:

"Police officers should not be required to guarantee the correctness of their determination that an offense is, in fact, being committed, in order to justify making an arrest without a warrant. An officer is often called upon to make a prompt decision, based upon his visual interpretation of the conduct of others which he· witnesses. If the circumstances are such as would cause a reasonable person to believe that a crime is being committed in his presence, then the officer can be said to have probable cause and is immune from liability for acting in good faith upon that belief. To require police officers to be insurers of the correctness of their judgment would hamper them in the performance of their duties. Under such circumstances, they would be most reluctant to make any arrests for fear that they would be held liable for having made an honest and reasonable mistake.

"Similar reasoning was expressed in Coverstone v. Davies, 1952, 38 Cal.2d 315, 321, 239 P.2d 876, 879, where the supreme·court of California stated:

" ' * * * It is thus manifest that the day to day problems of law enforcement require that peace officers be allowed to act without fear of being held liable upon the facts as they see them, provided such facts would lead a reasonable person to conclude that he was witnessing the commission of a public offense by the person arrested.'

"We hold that a police officer is entitled to make an arrest without a warrant, when he has reasonable cause to believe that a crime is being committed in his presence. It was reversible error to have refused to submit the defense of probable cause to the jury, and to have instructed the jury as indicated above."

Another case which supports the view that a law enforcement officer may, without a warrant, arrest a person for a public offense when he has reasonable grounds to believe that the offense has been committed in his presence, is the following: Cave v. Cooley, 48 N.M. 478, 152 P.2d 886.

Part of this decision reads as follows:

"Since the publication of the C.J.S. text, the court of appeals of Ohio in

Ryan v. Conover, 1938, 59 Ohio App. 361, 18 N.E.2d 277, 279 said:

" 'An officer may arrest a person when circumstances exist that would cause a reasonable person to believe that a crime has been committed in his presence. Section 13432-1, General Code; Bock v. City of Cincinnati, 43 Ohio App. 257, 183 N.E. 119; 6 Corpus Juris Secundum (Arrest, § 6, p.) 595; 3 Ohio Jurisprudence 140, Section 11. And this is true even though no offense has actually been committed. Consequently no civil liability attaches to him on account thereof in either circumstance.'

"All that Sec. 13432-1, General Code of Ohio, cited, says is:

" 'Officer may arrest on view. A sheriff, deputy sheriff, marshal, deputy marshal, watchman or police officer, herein designated as "peace officers" shall arrest and detain a person found violating a law of this state, or an ordinance of a city or village, until a warrant can be obtained.

" 'A constable within the limits of the township in which said constable has been appointed or elected, shall arrest and detain a person found by him in the commission of a misdemeanor, either in violation of a law of this state or an ordinance of a village, until a warrant can be obtained.'

"So, it is seen the holding of the court is not based upon express language of the statute but upon a rule of reason that the officer may act upon a bona fide belief on his part that the offense is being committed. So it is with decisions of other courts adopting this view." Cave v. Cooley, 48 N.M. 478, 152 P.2d 886, at 888.

It is my sincere conviction that the majority opinion ignores the obvious implications of important sections of the implied consent law which support the rule that an arrest may be made without a warrant where the law enforcement officer has reasonable grounds to believe that the offense therein specified has been committed in his presence. In so doing, the Court has not merely prevented the law from being an effective aid in reducing traffic injuries and deaths, but it has also invited all motorists to sue honest, conscientious law enforcement officials for false arrest, where the officials have made a reasonable mistake in the course of doing their duty.

The interpretation placed on our implied consent law and on our general law of arrest by the majority of our court also gives those officials who may be lax in enforcement of the laws or who may be tempted to be corrupt an excuse for not doing their duty.

Our general law of arrest, as it relates to a misdemeanor, permits a police officer, without a warrant, to arrest a person for a public offense committed in the officer's presence. Whether the arrest is legal should depend upon whether the officer had reasonable grounds to believe that the offense had been committed in his presence by the person arrested and should not depend upon whether the person was subsequently convicted or acquitted of the charge for which he was arrested. "The reasonable grounds" or, as stated by some courts, "the probable cause" which will justify an arrest for a misdemeanor without a warrant must be a judgment based upon the officer's personal knowledge acquired at the time through the senses or inferences properly to be drawn from the testimony of the senses.

In this case, the record would amply support a finding that the police officer who arrested Mr. Colling had reasonable grounds to believe that Mr. Colling had, in the presence of the officer, been driving a motor vehicle upon a public highway of the State of North Dakota while under the influence of intoxicating liquor. This belief or judgment was based on personal knowledge acquired at the time through his

senses. As the arrest without a warrant was therefore legal and as all other provisions of the implied consent law were complied with, the State Highway Commissioner acted within his authority in revoking the petitioner's driver's license.

For the reasons stated herein, applying both to our implied consent law and our general law of arrest, I would reverse the order of the district court and affirm the order of the State Highway Commissioner.